ATTORNEY FOR APPELLANTS
Kathryn D. Schmidt
Merrillville, Indiana

ATTORNEY FOR APPELLEES
Michael L. Muenich
Highland, Indiana

# In the
# Indiana Supreme Court

No. 56S03-0608-CV-303

JAMES ROSE AND ROBERT UNDERWOOD,

*Appellants (Defendants below),*

v.

MERCANTILE NATIONAL BANK OF
HAMMOND, A CORPORATION, AS TRUSTEE
UNDER THE PROVISIONS OF A CERTAIN TRUST
AGREEMENT DATED THE 25TH DAY OF JUNE,
1975, KNOWN AS TRUST NUMBER 3346; J.R.
CONSTRUCTION CO.; AND JOSEPH RAMACCI,

*Appellees (Plaintiffs below).*

Appeal from the Newton Superior Court, No. 56D01-9512-CP-44
The Honorable Daniel J. Molter, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 56A03-0405-CV-235

**June 20, 2007**

**Shepard, Chief Justice.**

Judgment creditor pursued the two shareholders of the judgment debtor through a proceeding supplemental contending fraudulent transfer, then amended the complaint to bring a new tort claim, as well. The trial court allowed the amendment and granted summary judgment to the creditor, awarding attorneys' fees and treble damages far in excess of the original judgment. Proceedings supplemental are only for collecting existing judgments, not for seeking new ones, so we reverse the trial court's grant of leave to amend the complaint.

**Facts and Procedural History**

Appellees Mercantile National Bank of Hammond, J.R. Construction Co., and Joseph Ramacci (collectively "Mercantile") sued Jasper-Newton Utility Company, Inc. in 1995 based on an agreement to provide water and sewer services. Jasper-Newton is a subchapter S corporation owned in equal shares by appellants James Rose and Robert Underwood. Jasper-Newton successfully moved for a change of judge in 1996 and the court held a bench trial in May 1999. On November 15, 2001, the trial court entered judgment against Jasper-Newton for $159,581. Jasper-Newton appealed, and the Court of Appeals affirmed. Jasper Newton Util. Co., Inc. v. Mercantile Nat'l Bank of Hammond, No. 56A03-0203-CV-71, slip op. (Ind. Ct. App. Feb. 12, 2003).

Meanwhile, in the spring of 2000, an agent for Utilities, Inc. ("Utilities") contacted Rose about the possibility of acquiring Jasper-Newton. Later that fall, Jasper-Newton and Utilities began negotiating a sale, and on January 12, 2001, Rose executed an agreement for the sale of Jasper-Newton's assets to Utilities for $475,000. Utilities transferred its rights and obligations under the agreement to Water Services Company of Indiana, Inc. ("WSCI"), a wholly owned subsidiary of Utilities.

Jasper-Newton and WSCI closed the sale on December 18, 2001, after necessary approval from the Indiana Utility Regulatory Commission; Jasper-Newton, Rose, and Underwood indemnified WSCI for all claims asserted in Mercantile's complaint. Acting on behalf of Jasper-Newton, Rose deposited the $475,000 sale proceeds into Jasper-Newton's bank account and, within three days, issued checks to Underwood and himself for $237,500.

Mercantile moved for proceedings supplemental on March 15, 2002. After Mercantile's motion to show cause, the court found Jasper-Newton in contempt for failing to comply with the November 15, 2001, judgment and awarded fees and costs of $6,324.85 to Mercantile.

On November 26, 2002, Mercantile filed fraudulent transfer claims against Jasper-Newton, Utilities, WSCI, Rose, and Underwood and sought attorneys' fees under Ind. Code §

2

34-52-1-1. It asserted that cash and assets had been transferred out of Jasper-Newton to avoid paying the judgment. Rose and Underwood moved for a change of judge, which the trial court denied. See Ind. Trial Rule 76(B).

WSCI moved for summary judgment on January 17, 2003. Rose and Underwood filed their answer to Mercantile's complaint on February 11, 2003. Two days later, Mercantile moved for summary judgment, and simultaneously moved for leave to amend its complaint to add a third claim for treble damages and attorneys' fees under the Crime Victims' Compensation Act ("CVCA"). Jasper-Newton, Rose, and Underwood responded to Mercantile's summary judgment motion on March 28, 2003, but did not address the motion to amend the complaint.

The trial court conducted a summary judgment hearing on July 8, 2003, without ruling on Mercantile's motion to amend the complaint. On July 23, 2003, Rose and Underwood tendered $181,300 to the clerk of court. The following day, the trial court granted summary judgment to Mercantile and denied it to WSCI.[1] The court calculated damages of $180,811.83, representing the original judgment amount plus statutory interest.

On August 11, 2003, Rose and Underwood filed an objection to Mercantile's motion to amend the complaint and requested a hearing. Jasper-Newton, Rose, and Underwood filed their answer to the amended complaint on November 7, 2003, and demanded a jury trial. On November 26, 2003, the court granted Mercantile's motion to amend the complaint *nunc pro tunc*, dating the order March 28, 2003. Mercantile moved to strike Rose and Underwood's jury trial demand, but the court ordered a bench trial for the fraudulent transfer claims and tentatively set the CVCA claim for a later jury trial.

On March 24, 2004, when the bench trial was set to take place, the court ruled that Rose and Underwood were not entitled to a jury and proceeded to hear evidence on Mercantile's claims, including the CVCA claim. The court entered judgment for Mercantile and awarded treble damages of $542,435.49 and attorneys' fees of $162,730. (Appellants' App. at 34-35.)

---

[1] Mercantile later dismissed its claims against WSCI.

Rose and Underwood challenged several of the trial court's rulings on appeal: the denial of change of judge, the grant of leave to Mercantile to add the CVCA claim, the denial of a jury trial on the CVCA claim, the finding of a fraudulent transfer, and the award of treble damages and attorneys' fees under the CVCA. The Court of Appeals affirmed in part, reversing only the attorneys' fees award, which it held to be unreasonable, and remanding for a new calculation. Rose v. Mercantile Nat'l Bank of Hammond, 844 N.E.2d 1035 (Ind. Ct. App. 2006), vacated. We granted transfer.

### Proceedings Supplemental Are for Enforcing Existing Judgments

Given the contorted procedural history of this case and the evident confusion about the rules in proceedings supplemental, we find it necessary first to touch on the law in this area.

*A. Proceedings Supplemental Generally.* Judgment creditors in Indiana have long relied on proceedings supplemental to execution to help enforce judgments. See Charles Levin, An Outline of Proceedings Supplementary, 14 Ind. L.J. 353 (1938); see also Toledo, Wabash and W. Ry. Co. v. Howes, 68 Ind. 458 (1879). With roots in equity, a proceeding supplemental offers the judgment creditor judicial resources "for discovering assets, reaching equitable and other interest[s] not subject to levy and sale at law and to set aside fraudulent conveyances." McCarthy v. McCarthy, 156 Ind. App. 416, 420-21, 297 N.E.2d 441, 444 (1973) (citation omitted).

Proceedings supplemental are generally governed by Trial Rule 69(E). A plaintiff may move for a proceeding supplemental in the court where judgment has been rendered by alleging that the plaintiff's judgment will not be satisfied and that the defendant or another party has property that ought to be applied toward the judgment. Ind. Trial Rule 69(E). And while Trial Rule 69(E) declares "[n]o further pleadings shall be required," our caselaw teaches that "when a new issue arises in a proceeding supplemental, responsive pleadings are required." Am. Underwriters, Inc. v. Curtis, 427 N.E.2d 438, 443 (Ind. 1981). Nonetheless, even when no new issue arises, a responsive pleading is still permitted. Id. The court must then allow discovery

4

and conduct a hearing, after which certain property shall be "applied towards the judgment." Ind. Trial Rule 69(E).

B. *Changes of Venue in Proceedings Supplemental.* In the days before the Indiana Rules of Trial Procedure, parties to the original suit could obtain a change of judge when a proceeding supplemental was filed. See Burkett v. Holeman, 104 Ind. 6, 3 N.E. 406 (1885). Modern practice has limited the availability of a change of judge to those defendants not party to the original action. See Arnold v. Dirrim, 398 N.E.2d 442 (Ind. Ct. App. 1979). Moreover, third-party defendants must make a prompt motion upon learning of the trial date or else the right to change of venue will be waived. Id. at 450. "To hold otherwise would only encourage unnecessary delays occasioned by late filing of change of venue motions which have as one of their objects the postponement or avoidance of a trial." Id.

The approach demonstrated by the Court of Appeals in Arnold best merges the rationale for proceedings supplemental with the right to a change of venue. Since proceedings supplemental are merely the continuation of an original action, the original parties have already been afforded the chance to move the case to another court or judge. As the Arnold court apparently realized, the only parties who stand to have their rights substantially diminished are those defendants whose first encounter with the case occurs through proceedings supplemental. We thus affirm the rule that third-party defendants in proceedings supplemental may engage the change of venue provisions in Trial Rule 76.

Rose and Underwood argue that they were not parties to the original action; thus, the trial court erred in denying their motion for change of judge. We conclude the contrary. Rose and Underwood not only knew of the original action, they acted on behalf of Jasper-Newton and were the only two individuals who could have so acted. While they were not parties to the original action in a strict sense, this form will not prevent us from recognizing the substance. The prompt and equitable process contemplated in proceedings supplemental militates in favor of treating Rose and Underwood as, in effect, original parties through their ties to Jasper-Newton. The trial court properly denied their motion for change of venue from the judge.

*C. Jury Trial Demands in Proceedings Supplemental.* Our state's approach to proceedings supplemental has likewise recognized that disputes may arise from the pleadings about which the right to trial by jury may attach. McMahan v. Works, 72 Ind. 19 (1880). Modern practice says this right pertains to issues of fact "amenable to a trial by jury." McCarthy, 156 Ind. App. at 420, 297 N.E.2d at 444. The Court of Appeals reasoned in McCarthy that because proceedings supplemental derive from equity, and because Trial Rule 69(E) consistently refers to such proceedings as "hearings," they should usually be "conducted before the court." Id. at 419-21, 297 N.E.2d at 443-44.

For all that appears, this approach developed over nearly 130 years seems to serve us well. While juries are disfavored in proceedings supplemental for their tendency to prolong matters, where the pleadings form issues of fact that a jury could reasonably decide, the parties may demand a jury trial.

*D. Fraudulent Transfer and Proceedings Supplemental.* Judgment creditors commonly invoke proceedings supplemental to bring fraudulent transfer actions, which Justice Fansler lucidly described:

> [Fraudulent transfer claims] have for their sole purpose the removal of obstacles which prevent the enforcement of the judgment by the executive officers of the state through the levy of execution. . . . While the action may involve a conveyance said to be fraudulent, the recovery is not for the wrong or tort. It is not in damages.

Beavans v. Groff, 211 Ind. 85, 90, 5 N.E.2d 514, 516-17 (1937). If a fraudulent transfer action is successful, "[t]he conveyances continue valid as between the grantor and grantee, and the only effect of the judgment is to subject the property to execution as though it were still in the name of the grantor." Id. at 90, 5 N.E.2d at 516.

Rose and Underwood contend that the evidence does not support the conclusion that they fraudulently transferred funds from Jasper-Newton's bank account to evade the original judgment. Contradicting their argument is the evidence of record demonstrating that Rose and Underwood eventually tendered $181,300 to Mercantile in satisfaction of the original judgment. This evidence aside, we agree with the Court of Appeals that the trial court did not err when it

6

found that Rose and Underwood fraudulently transferred Jasper-Newton's assets, and we summarily affirm on this issue. Ind. Appellate Rule 58(A).

*E. New Claims and Proceedings Supplemental.* Unlike the fraudulent transfer claims, Mercantile's attempt to seek new damages from Rose and Underwood by adding a Crime Victims' claim does not fit the purpose for proceedings supplemental. While the CVCA claim was based on the same facts as the fraudulent transfer claim, the remedy sought for the CVCA claim amounted to three times the original judgment amount, plus attorneys' fees. Allowing a new claim to be tacked on at this stage would be just as unfitting as opening up any other litigation to add new claims after judgment. Such an approach to collections would lay the groundwork for perpetual motion – a far cry from the timely and efficient system of conflict resolution the nation's judiciary strives to provide. Proceedings supplemental are appropriate only for actions to enforce and collect existing judgments, not to establish new ones.

The trial court improvidently granted Mercantile leave to amend the proceedings supplemental complaint to add a claim for new damages. We think it prudent policy that any action to assist in collection of an original judgment, i.e. a proceeding supplemental, must be filed under the same cause number as the original action. Conversely, any action that may result in imposition of a new judgment should be filed under a new cause number.

**Conclusion**

We affirm the trial court's denial of Rose and Underwood's motion for a change of judge. We summarily affirm the Court of Appeals' rejection of their claims about the court's grant of summary judgment to Mercantile on the fraudulent transfer claims. Ind. Appellate Rule 58(A). The trial court's judgment for contempt and for fraudulent transfer is affirmed.

We reverse the trial court insofar as it allowed Mercantile to amend its complaint and seek damages under the CVCA. Because the parties have understandably not briefed whether Mercantile may continue to pursue its CVCA claim through transfer to a new cause number or

7

some other means, we need not reach the issue of Rose and Underwood's demand for a jury in the CVCA claim. We remand for collection of any amounts remaining unpaid on the contempt and the fraudulent transfer, and so the trial court can consider whether Mercantile is entitled to attorneys' fees under Ind. Code § 34-52-1-1 as contemplated by the orders it entered on the request for same made in Mercantile's complaints.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.