In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3673

IN RE:

BOONE COUNTY UTILITIES, LLC,

*Debtor-Appellee.*

APPEAL OF:

BRANHAM CORPORATION.

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 C 1173—**Larry J. McKinney**, *Chief Judge.*

---

ARGUED SEPTEMBER 14, 2007—DECIDED OCTOBER 22, 2007

---

Before BAUER, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* The Branham Corporation appeals from an order of the district court which, in turn, affirmed an order of the bankruptcy court. The issues involve the decisions of the bankruptcy court not to allow Branham's claims against the bankruptcy estate, the most significant of which was found to be untimely.

We review a district court's decision to affirm the bankruptcy court *de novo*, which allows us to "assess the bankruptcy court's judgment anew, employing the same standard of review the district court itself used." *In re Kmart Corp.*, 381 F.3d 709, 712 (7th Cir. 2004). A bankruptcy court's refusal to consider a claim will be over-

turned "only in extreme cases, when the bankruptcy court has abused its discretion." *Id.*

The record in this case, including transcripts of several hearings, reveals a notable lack of clarity as to the basis for Branham's claims. The bankruptcy judge did his best to focus Branham's efforts, but we have the feeling that he left most hearings, as would anyone, scratching his head about exactly what Branham was arguing. Judges are not Sudoku masters (of course, there are some exceptions!) who enjoy filling in a grid with few hints about where things go.

Branham was hired by a development firm, Newland Resources, LLC, to aid in acquiring a drinking water supply and a wastewater treatment service for a project of Newland's. Newland created an entity, Boone County Utilities (the debtor), to operate the project. A contract between Newland and Branham provided that Branham was to be paid a fee for securing the services, reimbursement for out-of-pocket expenses, and a success fee, calculated basically as 8 percent of the fair market value of the total ownership interest in Boone in excess of $3,500,000.

After Boone filed its petition, the bankruptcy court established claims bar dates of May 26, 2004, September 9, 2004, and December 23, 2004. Branham filed a proof of claim, number 6, on May 11, 2004. The claim explicitly stated that it was based on a contract dated December 8, 1995 (the Branham/Newland contract); the claim was for $136,000. A second proof of claim, number 9, was filed September 9, 2004, and was based again on the Branham/Newland contract. This time no amount was stated. Then on September 10, 2004, Branham filed proof of claim 12, again based on the same contract, this time for $648,200.35. The contract was attached to each of these three claims. Each was timely filed on an official bankruptcy court form.

At a hearing on September 14, 2004, Boone's plan was confirmed over Branham's objection, and no appeal was taken. But just prior to the hearing, Branham had filed a motion for relief from the automatic stay under 11 U.S.C. § 362 so that it could file an action against Boone in state court. After a hearing, the motion was denied. The complaint, even though it contained claims against Newland and other parties not subject to the stay, was never filed in the state court.

Meanwhile, litigation proceeded in the bankruptcy court on Branham's claims. Motions to disallow claims were filed in the fall; a hearing was scheduled for December 16, 2004. The hearing date was continued twice at Branham's request. Finally, a hearing proceeded on May 18, 2005. The day before the hearing, Branham filed another amended proof of claim, this time for a whopping $7,007,954. Because the claim was patently untimely, Branham argued that it related back to prior claims 6, 9, 12, and an informal proof of claim. The alleged informal proof of claim was, in fact, the motion for relief from the stay and the proposed state court complaint. The bankruptcy judge found that claim 16 did not relate back because it set out new theories of recovery. It was disallowed as untimely.

In this appeal, Branham argues that claim 16 does not set out a new theory of recovery because proof of claims 6, 9, and 12 provide notice of an equitable claim for unjust enrichment, that a proposed state court complaint attached to a motion for relief from the stay satisfied the requirements for an informal proof of claim, that the state court complaint states a claim for unjust enrichment, and that under Federal Rule of Civil Procedure 15(c), proof of claim 16 relates back to the date of the informal proof of claim and to proof of claims 6, 9, and 12. In turn, Boone says the case is moot because the assets of the estate have been distributed.

Claims 6, 9, and 12 were explicitly based on the contract between Branham and Newland. Boone is not a party to the contract. Yet Boone is the debtor in whose case the claim is filed. This, in itself, was the subject of much confusion in the bankruptcy court. Realizing that Boone's not being a party to the contract was causing problems for its contract claim against Boone, counsel for Branham referred to a "constructive contract," a phrase which was never adequately explained. At the confirmation hearing, counsel for Branham stated:

> The Branham Corporation is arguing that there is a constructive contract, a quasi-contract, and that the claim for the success fee . . . is properly determinable by this Court.

The success fee arises directly out of the contract between Branham and Newland. A reasonable inference about what counsel was saying at this point is that somehow Boone is responsible for the success fee set out in the contract between Branham and Newland under a constructive contract theory. In fact, the bankruptcy judge tried to clarify a murky situation: he asked, "Your claim is based upon what? I guess I'm trying to track on this." Later, he asked if the claim was for a finder's fee. Branham's counsel said, "It's not a finder's fee, it's a success fee." Later, she stated that the claim was for approximately $648,000. That amount was arrived at based on a computation under the formula set out in the Newland/Branham contract. In other words, the only reasonable inference at this point from Branham's presentation of the claim was that it was dependent on the contract. There is no mention at this hearing of any sort of unjust enrichment claim or what such a claim would be based on. The reference to a quasi or constructive contract was an attempt to receive payment under the contract, as, in fact, claims 6, 9, and 12 explicitly stated.

Yet, on appeal, Branham is saying that by constructive contract in this situation it meant unjust enrichment because under Indiana law the terms are synonymous. That the words were used synonymously by Branham is not at all clear. In fact, it is clear they were not. If unjust enrichment is what Branham meant all along, it should have said so. Simply uttering the words might have gone a long way toward clarifying its claims in the bankruptcy court. And, in fact, we conclude that Branham was not arguing unjust enrichment. Until the day before the May hearing, Branham consistently contended in the bankruptcy court that it was owed a success fee.

And it wasn't until April 18, 2005, at a deposition, that there was any clear reference to unjust enrichment and an acknowledgment that there was no valid claim under an implied contract. George Pendygraft, Branham's owner and a licensed practicing attorney in Indiana, said that on September 14 he came to the

> understanding that the correct legal cause of action was unjust enrichment, and not some—some implied contract based on the Branham/Newland contract, because, as I looked at the law, which is how, frankly, I came to arrive with my counsel to the unjust enrichment theory, it became clear to me that the Branham/Newland contract was what the courts were describing as an express contract which had to either be in writing or oral, and I didn't have any express contract with BCU.

We agree with the bankruptcy and district courts and Mr Pendygraft that claims 6, 9, and 12 were contract claims—based on a contract to which the debtor was not a party. They were properly disallowed.

So, by the time of the deadline for claims, Branham had filed three proofs of claim based on a contract to which the debtor was not a party. It had also filed a motion for

relief from the stay and a proposed complaint to be filed in state court. As we said, the motion to lift the stay was denied. But, as relevant here, Branham now argues that the proposed complaint actually is an informal proof of claim.

Generally speaking, courts have set out a number of requirements for a document to qualify as an informal proof of claim. For instance, some courts say that the document must inform the court of the existence, nature, and amount of the claim and make clear the debtor's intention to hold the debtor liable for the claim. *In re Charter Co.*, 876 F.2d 861 (11th Cir. 1989). Another formulation of the requirements is that proof of claim must be in writing, it must contain a demand on the debtor's estate, it must express an intent to hold the debtor liable for the debt, and it must be filed with the bankruptcy court. *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604 (6th Cir. 2000).

We see no need to set out requirements for informal proofs of claim in this case. First of all, even assuming the proposed state court complaint were considered an informal proof of claim, it does not move Branham's case forward. The proposed complaint does not add anything to the other formal proofs of claim. It does not set out an unjust enrichment claim against Boone. The claims against Boone are once again for the success fee. Secondly, after the motion for a stay was denied, Branham had sufficient time to file a formal proof of claim and, as is clear from other filings, it knew perfectly well how to do so. This is not a situation in which equity demands that the document should be considered an informal proof of claim because it is the only way a creditor can recover on a legitimate debt. In contrast, Branham has three times previously set out virtually the same claim. Any one of the claims provides as good a basis as any other to make the ultimately futile argument that claim 16 should relate back.

Proof of claim 16 is clearly untimely. After the deadline for claims, one day before the hearing (which had been adjourned two times), amended claim 16 was filed. Not only is it untimely, but, as we said, it is a different claim. It does not mention a contract; it changes the date on which the debt was incurred from the date of the contract (September 8, 1995) to March 12, 2003; and it increases the claim from $648,200.35 to over $7 million. Yet, somehow Branham expects us to conclude that the bankruptcy judge abused his discretion in determining that this claim does not relate back to the prior claims and is therefore untimely. That we cannot do. As the district court (Chief Judge Larry J. McKinney) aptly noted:

> The Bankruptcy Court has the responsibility to administer its cases. It is well within its discretion under the rules to decide that an amended claim filed the night before a hearing, which had been continued twice by the claimant . . . is just too late.

We agree. The judgment of the district court is AFFIRMED.

A true Copy:

     Teste:

 

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*