

ATTORNEYS FOR APPELLANT

Donn H. Wray
Marc A. Menkveld
Katz & Korin, PC
Indianapolis, Indiana

Roger L. Burrus
Burrus & Sease, LLP
Zionsville, Indiana

Mickey J. Lee
McGinnis Wutscher Beiramee, LLP
Indianapolis, Indiana

APPELLEE PRO SE

John E. Bator
Bator Law
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Branham Corporation, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Newland Resources, LLC and <br> John E. Bator, et al. <br> *Appellees-Defendants.* | October 15, 2015 <br><br> Court of Appeals Case No. <br> 06A01-1409-PL-399 <br><br> Appeal from the Boone Circuit <br> Court. <br> The Honorable J. Jeffrey Edens, <br> Judge. <br> Cause No. 06C01-0409-PL-517 |

**Sharpnack, Senior Judge**

# Statement of the Case

This is the fourth[1] appeal in this litigation between the parties stemming from a contract for assistance in negotiation for the provision of water and sewer utility services in Boone County. Here, the trial court granted The Branham Corporation's motion to voluntarily dismiss without prejudice proceedings supplemental to execution of garnishment against certain garnishee defendants, conditioning the same upon the payment of the attorney fees incurred by the garnishee defendants up to the time of the filing of the motion to dismiss. The trial court later issued an amended order establishing the amount of the various attorney fee awards, setting a deadline for the payment of those fees, and ordering the dismissal be converted to a dismissal with prejudice in the event of nonpayment of the fees by the established deadline. The trial court's order was stayed pending appeal. Branham now appeals and John E. Bator, a garnishee defendant, cross-appeals.[2] We affirm.

---

[1] We granted the motion to consolidate two appeals under this cause number on October 29, 2014. Ultimately, the appeal consolidated with the present appeal was dismissed with prejudice. *Thomas N. Eckerle v. The Branham Corporation*, 06A01-1409-PL-405.

[2] Branham filed its verified motion for proceedings supplemental to execution and garnishment against Newland Resources, LLC, as defendant/judgment debtor, and against Samuel Sutphin, White River Funding Corporation, White River Venture Partners, L.P., James B. Harmon, Lindsey Harmon, Ecoholdings, LLC, Alana Fine Jewelry, N.V., Cornelius M. ("Lee") Alig, Dorothy Alig, Greenleaf, LLC, Royal Run Partners, L.P., John Michael Kensill, Ecosource, LLC, Thomas Eckerle, Melissa Rhodes Garrard, John Bator, Redman Ludwig, P.C., Boone County Utilities, LLC, Delores ("Dee") Sutphin, and other yet to be determined garnishees, as garnishee defendants. Bator is the only garnishee defendant who has entered an appearance and participated in this appeal. However, Indiana Appellate Rule 17(A) provides in pertinent part that "[a] party of record in the trial court . . . shall be a party on appeal."

# Issues

Branham raises the following issues on appeal, which we consolidate and restate as:

    I.     Did the trial court err by applying Indiana Trial Rule 41(A)(2) to proceedings supplemental filed under Indiana Trial Rule 69(E)?

    II.     Did the trial court err by ignoring its own mandatory local rule concerning signatures of an attorney of record on pleadings?

    III.     Did the trial court err by vacating a prior order after it had already become final and effective and no motion to correct error or appeal from that order had been pursued?

    IV.     Was Branham denied procedural and substantive due process?

Bator raises the following issue on cross-appeal:

    V.     Did the trial court err by limiting its award of attorney fees to only those fees incurred up to the filing of Branham's motion to dismiss?

# Facts and Procedural History

## Businesses, Attorneys, and Individuals Involved

To give context to the relationship of the various businesses, attorneys, and individuals involved, we first set forth their various roles. Boone County Utilities, LLC, is an Indiana limited liability company wholly owned by Newland Resources, LLC. Newland is owned by four entities: EcoHoldings, LLC, EcoSource, LLC, Greenleaf, LLC, and White River Venture Partners.

EcoHoldings, LLC, is the Managing Member of BCU. Appellant's App. p. 96.[3]
James B. Harmon is the Managing Member of EcoHoldings, LLC. *Id.* John
Michael Kensill is the Managing Member of EcoSource, LLC. *Id.* Cornelius
M. (Lee) Alig is the Managing Member of Greenleaf, LLC, and the principal of
Royal Run Partners, LP, the developer of Royal Run subdivision. *Id.* Samuel
Sutphin is the General Partner of White River Venture Partners. *Id.*

[4] Harmon also served as the Manager of BCU. *Id.* Kensill served as BCU's
Assistant Manager. *Id.* Delores (Dee) Sutphin was BCU's Bookkeeper. *Id.*

[5] The Branham Corporation entered into an agreement with Newland to provide
assistance in negotiating contracts to accept sewage flow from and for the sale
of water in Boone County, and is the judgment creditor of a judgment entered
against Newland on a breach of contract claim.

[6] Valenti-Held Real Estate Group, LLP is an affiliate of Valenti-Held
Contractor/Developer, Inc., an owner/developer of approximately 462 acres of
land located in Perry and Worth Townships of Boone County. *Id.* Valenti-

---

[3] Branham, in its Verified Motion for Proceedings Supplemental To Execution and Garnishment, made
reference to orders issued by the Indiana Utility Regulatory Commission ("IURC") that are available online
and asked the trial court to take judicial notice of them pursuant to Indiana Evidence Rule 201. The petition
appears in the Appellant's Appendix at page 96 and includes the website locations for those orders.
(https://myweb.in.gov/IURC/eds/Modules/Ecms/Cases/Docketed_Cases/ViewDocument.aspx?DocID=
0900b631800645c2);
(https://myweb.in.gov/IURC/eds/Modules/Ecms/Cases/Docketed_Cases/ViewDocument.aspx?DocID=
0900b63180071140). The information we use here is contained in those orders and we will cite to them only
by their location in the Appendix.

Held entered into a series of contracts with BCU for the provision of water and sewage utility services within its development. *Id.*

[7] Melissa Garrard is an attorney who represented Newland and for a time Dee Sutphin. Thomas Eckerle is an attorney who represented Newland and its members with regard to liquidation of BCU's assets from September 22, 2003 to September 28, 2004, and also represented Newland and its members in the BCU bankruptcy case. John E. Bator and his former law firm represented BCU in BCU's Chapter 11 liquidation proceedings in bankruptcy court.

## The Litigation

[8] Background information from prior appeals and actions in this matter is helpful to understand how the parties to this appeal arrived at this point. We draw our information from those cases and direct those interested in reading more about them to the pertinent citations listed below.[4]

[9] Newland was organized on October 11, 1994, and was originally formed to develop real estate, ultimately exploring a possible development project in Boone County known as the Royal Run Subdivision. In 1996, after considering options for the provision of water and sewer utility services to that subdivision, Newland formed a wholly-owned utility operating company known as BCU.

---

[4] *In Re Boone County Utilities, LLC*, 506 F.3d 541 (7th Cir. 2007); *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763 (Ind. Ct. App. 2009); *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979 (Ind. Ct. App. 2014); Appellee's Appendix pp. 151-62 (April 1, 2014 order of United States Bankruptcy Court S.D., Indianapolis Div.); and the IURC orders referenced above.

Newland entered into an agreement with Branham for assistance in negotiating a contract with the City of Indianapolis for the acceptance of sewage flow from the BCU service area and a contract with the Indianapolis Water Company for the sale of water to BCU for delivery in the BCU service area. Among the numerous terms of the contract between Newland and Branham was a provision for the calculation and payment of a success fee.

[10] On June 5, 2002, the IURC initiated an investigation into the operation of BCU. An interim order entered on March 12, 2003, imposed several conditions on BCU. That order was followed by a second interim order issued by the IURC on December 17, 2003, finding BCU in substantial and material non compliance with many of the conditions imposed earlier and scheduling a hearing to consider either the appointment of a receiver or the sale of BCU.

[11] Ultimately, BCU filed a petition for Chapter 11 bankruptcy and the bankruptcy court established three claims bar dates, each in 2004. Branham filed several proofs of claim, each timely filed, but each based on its contract with Newland. After delays requested by Branham, a hearing was held on Branham's claims. The day before that hearing Branham filed an untimely proof of claim that raised different theories of recovery. The district court denied the timely proofs of claim because they were contract based and BCU, the debtor, was not a party to the contract. The untimely proof of claim was denied because it was untimely and raised new theories of recovery. The district court's judgment was affirmed by the Seventh Circuit Court of Appeals. *In Re Boone County Utils., LLC*, 506 F.3d 541 (7th Cir. 2007).

[12] On February 11, 2004, the Town of Whitestown, BCU, and Valenti-Held entered into a Novation and Substitution Agreement that was conditioned upon approval from the bankruptcy court and any approval necessary from the IURC. Ultimately, the IURC deferred to the jurisdiction of the bankruptcy court. BCU filed a disclosure statement related to its amended liquidating plan of reorganization, and filed a plan establishing that Whitestown would pay $4,200,000.00 to BCU, and would pay $4,222,175.00 to Valenti-Held to resolve all of BCU's obligations to Valenti-Held. The bankruptcy court approved the agreement and the closing occurred on July 20, 2004 over Branham's objections.

[13] On October 31, 2005, Branham filed its first amended complaint against Newland and others. In the end, the only count remaining for trial was Branham's allegation of breach of contract against Newland regarding the calculation and payment of the success fee. At the conclusion of the jury trial, a verdict was returned in favor of Branham awarding damages in the amount of $397,853.92. The trial court entered judgment on the jury verdict and a panel of this Court affirmed the trial court's judgment. *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763 (Ind. Ct. App. 2009).

[14] On June 22, 2010, the Boone Circuit Court entered an order awarding Branham post-judgment interest on the jury verdict that had been upheld on appeal. Newland was given twenty-one days from the date of the order in which to satisfy the judgment plus interest. However, Branham was unable to collect the judgment.

[15] Pursuant to BCU's liquidation plan in the bankruptcy proceedings, distributions from the sale were made to creditors, and then Newland, the sole equity holder in BCU, for its equity interest. Claims for administrative expenses, administrative claims of professionals, and priority tax claims were not classified under the plan, but were to be paid as soon as practicable after the sale. Branham was not listed as a secured creditor because BCU was not a party to the contract between Newland and Branham.

[16] On December 29 and 30, 2011, Branham filed a Verified Motion for Proceedings Supplemental to Execution and Garnishment (Cause No. 06C01-0409-PL-517) ("517"), and a Complaint for Damages (Cause No. 06C01-1201-CT-0001) ("0001"). In 0001, Branham alleged claims under the Indiana Crime Victims Relief Act[5] and RICO[6] based upon predicate offenses of fraud/fraudulent transfer, deception, and conversion/theft/receiving stolen property. In a nutshell, Branham alleged that the manner in which the 2004-2005 distribution made by Newland from the BCU sale proceeds purposely depleted Newland's assets such that Newland was unable to satisfy Branham's judgment against Newland.

[17] The trial court entered summary judgment motions against Branham in 0001. On appeal, we affirmed the trial court's grant of summary judgment against

---

[5] Ind. Code § 34-24-3-1 (2011)

[6] Ind. Code § 35-45-6-2 (1991).

Branham and reversed the trial court's order dismissing Eckerle without prejudice, and remanded the matter to the trial court for entry of summary judgment in favor of Eckerle. This resolved the claims brought under 0001. *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979 (Ind. Ct. App. 2014).

[18] We now turn to the subject of this appeal which involves our review of the trial court's decision in 517, Branham's Verified Motion for Proceedings Supplemental to Execution and Garnishment.

[19] Although brought as a motion for proceedings supplemental, Branham's motion was much more than that. Proceedings supplemental to execution "may be enforced by verified motion or with affidavits in the court where the judgment is rendered alleging generally: (1) that the plaintiff owns the described judgment against the defendant; (2) that the plaintiff has cause to believe that levy of execution against the defendant will satisfy the judgment; (3) that the defendant be ordered to appear before the court to answer as to his non-exempt property subject to execution or proceedings supplemental to execution or to apply any such specified or unspecified property towards satisfaction of the judgment; and, (4) if any person is named as a garnishee, that garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion." Ind. Trial Rule 69(E).

[20] Branham's motion established that it is the owner of a judgment entered based on a jury's verdict in the same court and requested that the trial court take judicial notice of that judgment and the trial court's order on post-judgment interest. However, Branham's motion also threatened to seek the remedy of contempt, alleging that Newland disobeyed the trial court's order to pay the judgment by concealing property and engaging in fraudulent conveyances. Section XVII of the motion specifically alleges Newland fraudulently conveyed property. Other counts alleged various violations of the Indiana Business Flexibility Act. Ind. Code § 23-18-1-1 (1993).

[21] In section XXV, on page fifty-four of Branham's verified motion, Branham sought equitable relief from the court including "'piercing the corporate veil' where, as here, Newland's managers and/or members have committed wrongs such as (1) undercapitalization; (2) failure to maintain and/or provide corporate records; (3) fraudulent representations; (4) use of the company to promote fraud, injustice, or illegal activities; (5) conference of benefits on individual members; (6) commingling of assets and affairs; (7) failure to observe required company formalities; and (8) other acts that ignore, control, or manipulate the business form." Appellant's App. pp. 54-55. Branham further alleged that Harmon had perjured himself, and that Harmon, as the majority owner of EcoHoldings, violated various sections of the Indiana Code pertaining to limited liability companies by reporting to the Indiana Secretary of State an erroneous address for EcoHoldings' principal office and by falsely reporting that EcoHoldings' corporate records were maintained at that erroneous address.

On August 21, 2012, the trial court held a hearing on all pending motions in 517 and took the matter under advisement. Days after the hearing, Branham filed a motion to withdraw proceedings supplemental as to Dee Sutphin and Melissa Garrard. The trial court entered an order withdrawing the proceedings supplemental as to Sutphin and Garrard the next day before a response could be filed. Branham also filed a motion to withdraw proceedings supplemental as to Eckerle, Bator, and Redman Ludwig, P.C., and a separate motion to withdraw proceedings supplemental as to BCU.

On August 27, 2012, Eckerle filed an objection to Branham's motion as to him. Next, on September 4, 2012, Eckerle filed a motion to vacate Branham's withdrawal of proceedings supplemental against him. On September 14, 2012, Delores Sutphin and Melissa Garrard each filed motions for joinder in Eckerle's objection and motion to vacate the withdrawal. Likewise, Bator and Redman Ludwig, P.C., sought to join in Eckerle's objection and motion.

The trial court held a hearing on the matter on December 7, 2012. In an order issued on February 4, 2013, the trial court stated that it would allow Branham to withdraw proceedings supplemental without prejudice as to Bator, Redman Ludwig, P.C., Eckerle, Garrard, and Sutphin, conditioned on the payment of attorney fees to be determined by the court. The trial court later established the amount of fees to be paid and issued an order on August 25, 2014. Branham now appeals and Bator cross-appeals.

# Discussion and Decision

## Standard of Review

The parties agree that this matter should be reviewed de novo. Where the facts before the trial court are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, no deference is afforded the trial court's findings of fact or judgment. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). This is so because in those circumstances, a court on review is in as good a position as the trial court to determine the matter before it. *Id.* We will affirm the judgment of the trial court on any legal theory the evidence of record supports. *Id.* Nevertheless, the trial court's ruling is presumptively correct, and is subject to reversal on the basis of an incorrect factual finding only if the appellant persuades us that the balance of the evidence is contrary to the trial court's findings. *Id.*

## I. Conditions of Withdrawal of Proceedings Supplemental

Branham argues that the trial court erred by applying Indiana Trial Rule 41(A)(2) to impose conditions on its withdrawal of proceedings supplemental under Indiana Trial Rule 69(E). Branham argues that Trial Rule 41(A) applies only to *civil actions* and since proceedings supplemental are not *civil actions*, the rule is inapplicable.

Here, Branham filed proceedings supplemental under 517 in an effort to collect on its judgment against Newland. As our supreme court stated in *Rose v. Mercantile Nat. Bank of Hammond*, 868 N.E.2d 772, 775 (Ind. 2007), "[j]udgment

creditors in Indiana have long relied on proceedings supplemental to execution to help enforce judgments." "With roots in equity, a proceeding supplemental offers the judgment creditor judicial resources 'for discovering assets, reaching equitable and other interest[s] not subject to levy and sale at law and to set aside fraudulent conveyances.'" *Id.* (quoting *McCarthy v. McCarthy*, 156 Ind. App. 416, 420-21, 297 N.E.2d 441, 444 (1973).

[28]     "Proceedings supplemental are a continuation of the underlying claim on the merits—not an independent action." *Lewis v. Rex Metal Craft, Inc.*, 831 N.E.2d 812, 817 (Ind. Ct. App. 2005). They are initiated under the same cause number in the same court that entered judgment against the defendant. *Id.* In addition, although the rule itself explains that no further pleadings shall be required, case law requires responsive pleadings when a new issue arises. *Rose*, 868 N.E.2d at 775. Nevertheless, even when no new issue arises, responsive pleadings are permitted, leading to discovery and a hearing. *Id.*

[29]     Therefore, the issue here is not whether proceedings supplemental are civil actions under Indiana Trial Rule 3, but whether Indiana Trial Rule 41 provisions regarding dismissal apply to these particular proceedings supplemental. We believe that the trial court correctly concluded that they do.

[30]     For all of its prolixity, the 517 verified motion for proceedings supplemental requests only the kind of relief available through Trial Rule 69(E). However, it raises many new issues in the process of asserting its entitlement to funds purportedly held by the garnishee defendants. The trial court analogized the

517 proceedings supplemental to a tort claim because of the various allegations, substantially similar to those alleged in 0001, made against the garnishee defendants in the course of attempting to satisfy the judgment against Newland.

[31] As noted above, Branham's motion threatened to seek the remedy of contempt alleging that Newland disobeyed the trial court's order to pay the judgment by concealing property and engaging in fraudulent conveyances. Section XVII of the motion specifically alleges Newland fraudulently conveyed property. Other counts alleged various violations of the Indiana Business Flexibility Act. Ind. Code § 23-18-1-1 (1993).

[32] More specifically, Branham's motion threatened to seek the remedy of contempt alleging that Newland disobeyed the trial court's order to pay the judgment by concealing property and engaging in fraudulent conveyances. Section XVII of the motion specifically alleged Newland fraudulently conveyed property. Other counts alleged various violations of the Indiana Business Flexibility Act. Ind. Code § 23-18-1-1 (1993). Branham alleged that Newland's managers and/or members had committed wrongs such as (1) undercapitalization; (2) failure to maintain and/or provide corporate records; (3) fraudulent representations; (4) use of the company to promote fraud, injustice, or illegal activities; (5) conference of benefits on individual members; (6) commingling of assets and affairs; (7) failure to observe required company formalities; and (8) other acts that ignore, control, or manipulate the business form. Branham also alleged that payments made to the attorney garnishee

defendants for their legal services was in fact illegal because it was purportedly in contravention of the March 12, 2003 IURC order.

[33]  The trial court noted that responses had been filed to the 517 allegations to which no objection had been lodged and therefore conditioned Branham's withdrawal without prejudice of the proceedings supplemental as to those garnishee defendants on the payment of a portion of their attorney fees. Such a practice has met with approval in civil actions. *See Highland Realty, Inc. v. Indianapolis Airport Auth.*, 563 N.E.2d 1271, 1273 (Ind. 1990) (payment of defendant's attorney fees condition of voluntary dismissal without prejudice in civil action pending for over five years in three counties).

[34]  Just as equitable principles are involved in proceedings supplemental as a remedy to creditors in discovering assets in collection of their judgments, it is appropriate under these specific circumstances for the trial court to exercise its equitable power here to protect the interests of the garnishee defendants.

[35]  "As a general proposition, the trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved." *Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178 (Ind. Ct. App. 2006), *trans. denied*. Nonetheless, trial courts will not exercise equitable powers when an adequate remedy at law exists. *Id.* Where necessary, equity has the power to pierce rigid statutory rules to prevent injustice. *Id.* But if substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law. *Id.* at 1178-79.

[36] The garnishee defendants have defended against the proceedings supplemental initiated by Branham and have incurred attorney fees in the process. That the litigation up to this point has been contentious is manifest. As the trial court noted, Branham's verified motion was fifty-nine pages long and made specific allegations against the garnishee defendants to the point that the allegations resembled a tort claim to which the garnishee defendants felt compelled to respond. The proceedings supplemental were initiated on December 29, 2011. By February 4, 2013, when the court filed its initial order on the motion to withdraw, the parties had filed and responded to many motions and pleadings. The garnishee defendants denied the proceedings supplemental allegations and filed affirmative defenses to Branham's claims.

[37] With respect to attorney fees, Indiana adheres to the American Rule, namely that each party must pay his own attorney fees absent an agreement between the parties, statutory authority, or a rule to the contrary. *Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), *trans. denied*. There are certain recognized exceptions to the general rule, which are inapplicable here. *See State Bd. of Tax Comm'rs v. St. John*, 751 N.E.2d 657, 659 (Ind. 2001)(recognizing equitable exceptions of obdurate behavior and common fund to American rule).

[38] Branham seeks to have the proceedings supplemental dismissed without prejudice against these garnishee defendants. Understandably, the garnishee defendants are concerned about incurring additional attorney fees in the event that Branham refiles proceedings supplemental against them. The trial court correctly concluded that as a condition of withdrawing the proceedings

supplemental without prejudice, Branham must pay a portion of the reasonable attorney fees incurred by the garnishee defendants. We find no error in the trial court's use of Indiana Trial Rule 41(A)(2) to effect this equitable remedy.

[39] Similarly, we reject Branham's argument that the motion to withdraw did not need a court order, under Indiana Trial Rule 41(A)(1)(a), because no answer or motion for summary judgment had been filed by the garnishee defendants. Many pleadings which were appropriate responses and challenges to the proceedings supplemental were filed by the garnishee defendants without objection. Motions to dismiss, motions to quash, and motions to stay were filed prior to the filing of the motions to withdraw. The motions to withdraw made specific reference to statements made during a hearing held on August 21, 2012. We conclude that under the particular circumstances of this case the trial court correctly determined that the voluntary dismissal without prejudice should be by order of the court with conditions imposed.

## II. Boone County's Local Rule

[40] Next, Branham argues that the trial court erroneously failed to apply its mandatory local rule to Bator. Branham contends that since Bator admitted he did not file an appearance in this action, any pleadings accepted for filing should have been struck from the record. Branham turns to Indiana Trial Rule 3.1 in support of its argument.

[41] In Boone County, appearances by counsel are governed by local rule. Boone LR06-TR03.1. Subsection (A)(1) of the rule provides that "[e]very pleading

filed shall clearly identify the name, address and telephone number of the attorney filing the pleading. Any attorney for a party shall first file his formal written Appearance in accordance with Trial Rule 3.1 and Criminal Rule 2.1." *Id.* Subsection (A)(2) additionally provides that "[a]ny pleading not signed by at least one attorney appearing of record as required by T.R. 11 of Indiana Rules of Procedure shall not be accepted for filing, or, if inadvertently accepted for filing, shall, upon discovery of the omission, be struck from the record." *Id.*

[42] In *Meredith v. State*, 679 N.E.2d 1309, 1310 (Ind. 1997), our Supreme Court discussed the ability of Indiana trial courts to "establish rules for their own governance, so long as the rules are not inconsistent with rules prescribed by the Indiana Supreme Court or by statute." Local rules were described as generally procedural rules intended to standardize practice within that court, to facilitate the flow of information, and to enable the trial court to rule on the merits of the case, in an effort to help the parties and trial court. *Id.* While observing the general purpose of local rules, the Supreme Court noted that strict adherence to the rules should yield where "invoking them would defeat justice." *Id.* at 1311. The Supreme Court cautioned, however, that "[b]efore a court may set aside its own rule, it should not be set aside lightly, the court must assure itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule." *Id*. Mandatory rules are described as those that set time limitations or other requirements which must be met before the trial court may hear the case. *Id.* n.2.

[43] Here, Branham did not file a written objection to any of Bator's pleadings and did not move to strike them for failure to comply with the local rule. Rather, Branham orally raised the issue of noncompliance with the rule at the hearing held on October 23, 2013, during which the issue of attorney fees was addressed after the proceedings supplemental had been ordered dismissed. Branham was not prejudiced by the noncompliance. We find that under the circumstances of this case the trial court did not abuse its discretion by waiving compliance with the local rule.

## III. Final Order Vacated

[44] Branham claims that the trial court erred by vacating its prior order granting its request for the withdrawal of proceedings supplemental as to Garrard and Sutphin. Branham claims that according to Indiana Trial Rule 54 once the trial court entered its order voluntarily dismissing the proceedings supplemental against Garrard and Sutphin, the order became a final appealable order that could not be vacated by a subsequent order.

[45] Garrard and Sutphin have not participated in this appeal. Where an appellee fails to file a brief, we review the matter to determine if the appellant has made a prima facie showing of reversible error. *Cox v. State*, 780 N.E.2d 1150, 1162 (Ind. Ct. App. 2002). Prima facie error has been described as error at first sight, on first appearance, or on the face of it. *Id.*

[46] The record reveals only the trial court's CCS entry reflecting that it was withdrawing the proceedings supplemental as to Garnishee Defendants Garrard

and Sutphin. Appellant's App. p. 553. Trial Rule 54(B) provides in pertinent part that "A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment, but in other cases a judgment, decision or order as to less than all the claims and parties is not final." Here, there is no evidence in the record to suggest that the order withdrawing proceedings supplemental against Garrard and Sutphin is a final appealable order.

[47]     Indiana Trial Rule 53.4 addresses repetitive motions and motions to reconsider filed by a party or on the court's own motion to revisit a court's orders or rulings. "[A] trial court has inherent power to reconsider any of its previous rulings so long as the action remains *in fieri*." *Stephens v. Irvin*, 734 N.E.2d 1133, 1135 (Ind. Ct. App. 2000), *trans. denied*. Here, Branham sought voluntary withdrawal of proceedings supplemental against Garrard and Sutphin, but not all garnishee defendants, while all had incurred expense in defending the proceedings. The trial court was well within its power to reconsider its prior order. Branham has failed to establish prima facie error in the trial court's decision to revisit the issue whether voluntary withdrawal of the proceedings supplemental against Garrard and Sutphin without allowing them to have notice and an opportunity to respond was proper.

# IV. Due Process Violation

[48] Next, Branham contends that certain of the trial court's findings include language it suggests indicates that the trial court considered extrinsic evidence against which it was unable to defend. More specifically, Branham challenges the following language from the trial court's February 4, 2013 order:

> 25) Clearly, a typical T.R. 69(E) motion for proceedings supplemental is not a new civil action.
>
> 26) That being said, Branham's Motion is just as clearly not a typical motion for proceedings supplemental.
>
> . . . .
>
> 54) If Branham was only attempting to inquire as to assets that the Garnishee Defendants might possess, in order to satisfy its judgment, it did so by applying a sledgehammer to a nail.
>
> . . . .

Appellant's Appendix pp. 70, 74.

[49] Branham contends that it was denied procedural due process under article I section 12 of the Indiana Constitution and section 1 of the Fourteenth Amendment to the United States Constitution, namely because it had no notice that the trial court would consider its motion to be atypical or its actions akin to applying a sledgehammer to a nail, thus denying Branham the opportunity to defend against those considerations. Branham bases its substantive due process allegation brought under article I section 12 of the Indiana Constitution on the notion that the trial court's use of those standards means that its decision was subjective and arbitrary.

[50] We do not accept Branham's characterization of the trial court's comments. The comments do not suggest the application of an unannounced standard. Rather, they reflect fair comment on the nature of this particular verified motion for proceedings supplemental. The verified motion for proceedings supplemental did more than was required under Indiana Trial Rule 69(E) in terms of alleging facts in support of its ownership of a debt, that the judgment debtor has insufficient funds to satisfy the judgment, and that the garnishee defendants possess or will possess property owed to the judgment debtor that could be applied toward satisfaction of the judgment. The motion alleged that the judgment debtor fraudulently concealed property and had attempted to defraud Branham. Further, the motion contained various allegations of fraudulent concealment, breach of fiduciary duty, and other violations of Indiana law against the garnishee defendants.

[51] "The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law." *Bankhead v. Walker*, 846 N.E.2d 1048, 1053 (Ind. Ct. App. 2006). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* Both the federal and state constitutional provisions "prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is a fair proceeding." *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*, 694 N.E.2d 222, 241 (Ind. 1997).

It is true that Indiana Trial Rule 69(E) does not have a page limitation or requirement that there be a separate motion for each garnishee. However, the trial court's comments reflect that this particular motion for proceedings supplemental went beyond the scope of the trial rule by including new tort claims and a host of other allegations against the named garnishee defendants. The other tort allegations, above and beyond the allegation of the ownership of the judgment against Newland, were not reduced to judgment such that they qualified as judgments owned by Branham that could be enforced through proceedings supplemental. We find no reversible error here in the trial court's characterization of those additional claims.

As for substantive due process, the federal and state due process analysis is identical. *N.B. v. Sybinski*, 724 N.E.2d 1103, 1112 (Ind. Ct. Ap. 2000), *trans. denied*. "Substantive due process ensures that state action is not arbitrary or capricious regardless of the procedures used." *Id.* "An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion." *City of Indianapolis v. Woods*, 703 N.E.2d 1087, 1091 (Ind. Ct. App. 1998), *trans. denied*. We do not reweigh evidence in conducting our appellate review. *Id.*

We cannot characterize the trial court's comments as arbitrary and capricious. The trial court acknowledged for the record that this particular proceedings supplemental went beyond those commonly adjudicated. We do not find the trial court's judgment based upon those findings to be patently unreasonable.

[55] Branham further argues that it was denied due process because Bator filed dual captioned pleadings that allegedly lack specificity as to which arguments applied to the 0001 case and the 517 case. Again, we disagree with Branham's representations. Both actions arose out of the same facts, the transcript of the hearings includes both captions, and the CCS reflects entries cross-referencing orders and rulings from both actions. Bator's response to Branham's motion to withdraw contained arguments specifically addressing both actions. To be sure, Branham should not have been confused by Bator's responses regardless of the labeling. Many if not all of the 0001 allegations were infused in the 517 verified motion; therefore, the responses were likely quite similar. We find no denial of due process here.

[56] Next, Branham argues that it was denied due process because Bator, Garrard, and Sutphin's filings incorporated by reference entire pleadings which lacked required specificity. Indiana Trial Rule 10(C) provides in pertinent part that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." "The principal purpose of incorporation by reference is to avoid confusion, redundancy and repetition. When incorporating matters by reference, it is important that the reference be direct, clear and explicit in identifying the particular allegation of the pleading which is to be incorporated." Stephen E. Arthur and Jerome L. Withered, 21 Ind. Practice, Civil Trial Practice § 13.21 (2d ed.).

[57] Here, given the complexity of the issues raised and the responsive pleadings necessary to defend against the numerous allegations, we conclude that the trial

court did not err by allowing the parties to incorporate entire pleadings by reference. To require otherwise would have defeated the principal purpose of the trial rule.

## V. Limitation on Attorney Fee Award

[58] Bator cross-appeals, arguing that the trial court erred by limiting the attorney fee award to the work done up to the point that Branham filed its motion to withdraw the proceedings supplemental. Bator contends that the legal work completed in opposition to the motion to withdraw led to the award of attorney fees and should have been included in the trial court's calculation. On the other hand, Branham argues that to the extent the trial court correctly awarded any attorney fees at all, it did not err by imposing the limitation.

[59] We note that Bator invokes review of the attorney fee award under a clearly erroneous standard. Reply Br. of Cross-Appellant p. 4. However, the cases cited by Bator are distinguishable in that the attorney fees under appellate review were awarded as sanctions for claims found to be frivolous, unreasonable, and groundless. *See Davidson v. Boone Cnty.*, 745 N.E.2d 895 (Ind. Ct. App. 2001); *Kahn v. Cundiff*, 533 N.E.2d 164 (Ind. Ct. App. 1989). Here, the attorney fees were awarded as a condition of withdrawal of the proceedings supplemental without prejudice.

[60] Branham argues that Bator and the other garnishee defendants have suffered a negative judgment and that standard of review is applicable. We disagree. A judgment entered against a party who bore the burden of proof at trial is a

negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). A negative judgment will be reversed on appeal only where it is contrary to law. *Id.* The payment of the garnishee defendants' attorney fees was a condition of the request for voluntary withdrawal of proceedings supplemental without prejudice. Thus, the garnishee defendants bore no burden of proof and suffered no negative judgment. They were allowed to supply the trial court with affidavits setting forth the time and rate for the legal work conducted in defending the proceedings supplemental.

[61] In *Highland Realty*, our Supreme Court held that "[a]ppellate courts in Indiana will take jurisdiction of T.R. 41(A)(2) fee award appeals and decide in each case whether the trial court abused its discretion by awarding unreasonably high attorney's fees." 563 N.E.2d at 1274. The standard of review of such claims is for an abuse of discretion. *Id.* Although the question raised here is whether the attorney fee award is unreasonably too low because of the limitation on fees considered, we nonetheless review the trial court's award for an abuse of discretion.

[62] The trial court chose to limit the amount of legal work to be reimbursed to the effort to defend against the proceedings supplemental. This award was a condition imposed upon Branham by the trial court if it chose to seek a voluntary withdrawal of the proceedings supplemental without prejudice. The legal work applied to objecting to the voluntary withdrawal, was a different enterprise altogether. The garnishee defendants were no longer in the position of defending against the proceedings supplemental, but were vigorously

attempting to prevent the filing of subsequent proceedings supplemental in the matter if the withdrawal was without prejudice. "Requiring the plaintiff to reimburse the defendant for attorney's fees before voluntary dismissal in a case like this one, where litigation has been long and costly, is simply a means of protecting the defendant from the consequences of the plaintiff's choice to run up the legal services bill, then walk away and wait for a better day to refile its suit." *Id.* at 1273. The trial court did not abuse its discretion.

# Conclusion

[63] In light of the above, we affirm the trial court's judgment. In order to voluntarily withdraw the proceedings supplemental without prejudice, Branham must pay attorney fees as ordered by the trial court.

[64] Affirmed.

Riley, J., and Brown, J., concur.