

**FILED**

May 29 2019, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE –
ROBERT C. THOMPSON, JR.

Joseph M. Dietz
Meils, Thompson, Dietz, & Berish
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
BENJAMIN MCQUEARY

John A. Cremer
Jonathan E. Lamb
Cremer & Cremer
Fishers, Indiana

ATTORNEY FOR APPELLEES –
NATHAN MCQUEARY AND
WILLIS MATTHEW MCQUEARY

William A. Maschmeyer
Haggerty, Haggerty, &
Maschmeyer
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: Petition to Docket Trust of Sadie G. McQueary, | May 29, 2019 |
| | Court of Appeals Case No. 18A-TR-915 |
| | Appeal from the Marion Superior Court |
| | The Honorable Steven R. Eichholtz, Judge |
| | Trial Court Cause No. 49D08-1404-TR-12478 |
| Gary R. McQueary, *Appellant-Plaintiff,* v. Robert C. Thompson, Jr., Successor Trustee; Benjamin McQueary; Willis Matthew McQueary; and Nathan McQueary, *Appellees-Defendants.* | Court of Appeals Case No. 18A-TR-915 |
| | Appeal from the Hamilton Superior Court |
| | The Honorable Steven R. Nation, Judge |
| | Trial Court Cause No. 29D01-1707-PL-7104 |

**Najam, Judge.**

# Statement of the Case

Gary R. McQueary is the former trustee of The Sadie G. McQueary Revocable Living Trust ("the Trust") as well as a beneficiary of the Trust. Nathan McQueary, Willis McQueary, and Benjamin McQueary (collectively, "the Grandsons") are also beneficiaries of the Trust. In this consolidated appeal,

Gary appeals the Marion Superior Court's order granting a motion by Robert C. Thompson, as successor trustee ("the Trustee"), to enforce a mediated settlement agreement that Gary had entered into along with the Grandsons that settled disputes related to the Trust. Gary further appeals the Marion Superior Court's order that he pay $20,831.25 in attorneys' fees based on the court's conclusion that Gary breached the terms of the settlement agreement. Gary also appeals the Hamilton Superior Court's dismissal of his action for quiet title, which related to real property held by the Trust.

[2] Gary presents three issues for our review, which we revise and restate as follows:

1. Whether the Marion Superior Court erred when it granted the Trustee's motion to enforce the settlement agreement.

2. Whether the Marion Superior Court erred when it ordered Gary to pay attorneys' fees based on its determination that Gary breached the terms of the settlement agreement.

3. Whether the Hamilton Superior Court erred when it dismissed his complaint to quiet title.

Additionally, the Trustee and the Grandsons jointly raise the following issue for our review:

4. Whether they are entitled to an award of appellate attorneys' fees.

We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

On February 19, 2004, Sadie McQueary established the Trust. One of the assets of the Trust is a forty-acre parcel of land in Westfield ("the Westfield property"). The Trust provided that, upon Sadie's death, the trustee shall distribute fifty percent of the estate to Gary, who is Sadie's son, and fifty percent to the Grandsons.[1]

Sadie died on June 10, 2013. At the time of her death, Gary became the successor trustee of the Trust. On April 17, 2014, Nathan and Willis filed a petition to docket the Trust in the Marion Superior Court. In that petition, Nathan and Willis alleged that Gary had failed to carry out his fiduciary responsibilities under the Trust. Nathan and Willis requested "a full and complete current accounting" of all actions Gary had taken as trustee. Appellant's App. Vol. II at 121. On January 27, 2015, Gary and the Grandsons entered into an agreed entry in which Gary, as trustee, agreed to list the Westfield property for sale for a price of $2.2 million.

Gary filed an accounting of the Trust on May 15. Thereafter, Benjamin filed an objection to the accounting. Specifically, Benjamin asserted that there were "a

---

[1] The Grandsons are the sons of Sadie's son, Gregory, who predeceased Sadie.

number of expenditures from the Trust assets" which did not "relate to any term of the [T]rust." *Id*. at 124. Nathan and Willis also filed an objection to Gary's accounting.

[7] On August 24, 2015, Gary and the Grandsons entered into a mediated settlement agreement. Pursuant to that agreement, Gary agreed to resign as trustee of the Trust, and Gary and the Grandsons agreed to appoint Thompson as successor trustee. The parties agreed that Gary's son, Jake McQueary, would vacate the Westfield property within thirty days. Gary and the Grandsons agreed to extend the real estate listing for the Westfield property for three months. Additionally, they agreed to distribute three parcels of real estate from the Trust to Gary, which were valued at $233,000. The parties also agreed that Gary would refund $71,707 to the Trust. Gary agreed to pay $48,000 in attorneys' fees. In total, the parties agreed that Gary's share in the Westfield property would be reduced by $352,707. The trial court approved the settlement agreement on August 27.

[8] Upon the expiration of the listing contract for the Westfield property, the Trustee contacted local real estate brokers about the property. The real estate brokers advised the Trustee that he needed to obtain a survey in order to sell the property, which would cost between ten and fifteen thousand dollars. Gary and the Grandsons did not agree to spend the money for the survey at that time.

[9]     In July 2017, Gary and the Grandsons agreed to spend the money for the survey of the Westfield property. However, Gary quickly revoked his consent. On July 28, Gary instead filed a complaint to quiet title to the Westfield property in the Hamilton Superior Court. In his complaint, Gary asserted that he "is now and has been since . . . the date of Sadie's death, the owner of an undivided one-half . . . interest in and to" the Westfield property. *Id.* at 58. He also asserted that the Grandsons were equal owners of the other one-half interest. Accordingly, Gary sought an order from the Hamilton Superior Court declaring that title to the Westfield property had vested in Gary and the Grandsons outside of the Trust at the time of Sadie's death.

[10]    On August 8, the Trustee filed a motion to dismiss Gary's complaint in Hamilton County pursuant to Indiana Trial Rule 12(B)(8) on the ground that the same action was pending in the Marion Superior Court. Specifically, the Trustee asserted that "[c]onfusion will be the prime result if two Courts . . . attempt to resolve the differences among the beneficiaries of [the Trust] concerning this land[.]" Appellant's App. Vol. III at 34. The Grandsons all joined in the Trustee's motion to dismiss. In response, Gary asserted that "[t]he matters for which the Trust was docketed in Marion County were concluded with the Court's order" approving the settlement agreement. *Id.* at 72. He further asserted that "[t]here is no matter pending in any other Court which relates to the title of" the Westfield property. *Id.*

On December 21, the Trustee filed a petition for instructions in which he asked the Marion Superior Court whether he could spend the money for a survey of the Westfield property. He further asked the court if he could accept offers on the property of below one million dollars without the consent of Gary and the Grandsons if he believed it to be in the best interest of the Trust.[2] Nathan and Willis filed a response in which they consented to paying for a survey of the property. In addition, Nathan and Willis stated that they would agree to the Trustee negotiating a sale for less than one million dollars subject to court approval following notice and a hearing.

On February 6, 2018, the Hamilton Superior Court held a hearing on Gary's complaint to quiet title. Following the hearing, the Hamilton Superior Court took the matter under advisement pending a determination by the Marion Superior Court as to whether all of the terms and conditions of the mediated settlement agreement had been completed and whether the Trust should be removed from the docket. The Hamilton Superior Court concluded that, "[o]nce the Marion County Court has made such determination, this Cause will be dismissed or proceed." *Id*. at 155.

---

[2] It is not clear from the record, but it appears that at some point Gary and the Grandsons agreed to list the property for $1.25 million instead of $2.2 million.

[13] On February 27, Gary filed a motion to dismiss the Trustee's petition for instructions in the Marion Superior Court. Gary asserted that the Trustee's petition should be dismissed pursuant to Trial Rule 12(B)(8) because the Trustee's petition sought to have the Marion Superior Court exercise jurisdiction over property that was the subject of Gary's quiet-title action in the Hamilton Superior Court, and also because the terms of the Trust could not be amended by the parties or by the court. In the same motion, Gary requested that the Marion Superior Court enter an order allowing the quiet title action to proceed in Hamilton County. In support of his request, Gary asserted that "[t]here exists no authority" for the Trustee or anyone else to serve as trustee following Sadie's death "except for the purpose of distributing the assets" in accordance with the terms of the Trust, which he asserted required the assets to be distributed immediately upon Sadie's death. Appellant's App. Vol. II at 55. He further asserted that the settlement agreement approved by the court had settled the disputes between Gary and the Grandsons.

[14] On March 5, the Trustee filed a motion in the Marion Superior Court to enforce the mediated settlement agreement. The Trustee asserted that Gary had violated the terms of the settlement agreement when he filed his quiet-title action in the Hamilton Superior Court, which the Trustee described as "a deliberate campaign to prevent Trustee Thompson from selling the Westfield property which would block the repayment of $352,707 Gary McQueary owes to the other beneficiaries." *Id*. at 77. The Trustee asked the Marion Superior

Court to notify the Hamilton Superior Court that the terms of the settlement agreement had not been fulfilled and that the Trust remained docketed in Marion County and to find that Gary breached the terms of the settlement agreement when he filed the complaint to quiet title in Hamilton County.

[15]     On April 4, the Marion Superior Court issued an order in which it found that it had "acquired jurisdiction of the trust when the trust was docketed." *Id*. at 152. The court also found that "[t]he title to the Westfield real estate in issue has remained a trust asset" since Sadie deeded it to the Trust before her death. *Id*. at 151. The court further found that the property "remains an asset of the Trust now and is subject to Trustee Thompson's efforts to sell" the property at a price acceptable to Gary and the Grandsons. *Id*. The court further noted that, despite Gary's contentions to the contrary, the Trust "expressly allows" for the sale of the Westfield property and that there is nothing in the parties' mediated settlement agreement "that modifies the terms of the trust." *Id*. at 153. The court granted the Trustee's motion to enforce the settlement agreement. The court then directed the Trustee and the Grandsons to file motions for attorneys' fees as they "have prevailed in their efforts to stop Gary McQueary from depriving the trust of its last remaining asset[.]" *Id*. at 154.[3]

---

[3] Gary appealed the Marion Superior Court's order on April 24. However, he subsequently asked this Court to remand the matter to the trial court. This Court granted his motion and remanded to the trial court with instructions for the trial court to hold a hearing on the issue of attorneys' fees.

The Trustee filed a notice of the Marion Superior Court's order with the Hamilton Superior Court and reasserted his claim that the Hamilton Superior Court should dismiss Gary's complaint to quiet title. Based on the Marion Superior Court's April 4 order, the Hamilton Superior Court dismissed Gary's complaint to quiet title on May 7.

Thereafter, the attorneys for the Trustee, Nathan and Willis, and Benjamin filed their respective petitions for attorneys' fees in the Marion Superior Court. In response, Gary asserted that his complaint to quiet title in Hamilton County was not a breach of the mediated settlement agreement and, as such, there was no "factual or legal basis" for the award of attorneys' fees. *Id.* at 206. Following a hearing at which the attorneys presented argument regarding whether Gary breached the settlement agreement, the Marion Superior Court granted the attorneys' petitions. The trial court ordered Gary to pay $13,950 to the Trustee's attorney, $3,100 to Benjamin's attorneys, and $3,781.25 to Nathan and Willis' attorney. This interlocutory appeal ensued.

## Discussion and Decision

### *Issue One: Mediated Settlement Agreement*

Gary first contends that the Marion Superior Court erred when it granted the Trustee's motion to enforce the settlement agreement. However, Gary has invited any error in the trial court's enforcement of the settlement agreement. "[T]o establish invited error, there must be some evidence that the error resulted

from the appellant's affirmative actions[.]" *Batchelor v. State*, 119 N.E.3d 550, 557 (Ind. 2019). Here, Gary was a party to the mediation that resulted in the mediated settlement agreement, he signed the settlement agreement, and he joined the Grandsons in asking the trial court to accept the settlement agreement. Accordingly, Gary took affirmative action in asking the court to accept the mediated settlement agreement. As such, he cannot now claim that the trial court erred when it enforced the agreement he had asked it to accept.

[19] Invited error notwithstanding, Gary contends that the trial court erred when it enforced the mediated settlement agreement because the settlement agreement impermissibly altered the terms of the Trust. To address Gary's assertion on appeal, we must interpret the Trust. "The interpretation of a trust document is a question of law for the court. The primary purpose in construing a trust instrument is to ascertain and give effect to the settlor's intention." *Kristoff v. Centier Bank*, 985 N.E.2d 20, 23 (Ind. Ct. App. 2013). "We examine the trust document as a whole to determine the plain and unambiguous purpose of the settlor as that intent appears within the four corners of the instrument." *Graninger v. Nat'l City Bank of Ind. (In re Trust Stonecipher)*, 849 N.E.2d 1191, 1195 (Ind. Ct. App. 2006).

[20] Gary's argument on this issue is that the Trust "plainly require[s] the distribution of assets upon and following the death of the Settlor, which occurred on June 10, 2013," Appellant's Br. at 17, and, as such, by keeping the

Westfield property within the Trust after Sadie's death the settlement agreement violates the terms of the Trust. That is, Gary contends in effect that the settlement agreement altered the terms of the Trust by allowing the Trustee to sell the Westfield property instead of immediately distributing the property to Gary and the Grandsons.

[21] To support his contention that the Trustee was required to distribute the assets immediately following Sadie's death, Gary cites two provisions of the Trust. Article IV(D) provides that, "[u]pon the death of the Grantor, the Trustee shall . . . divide the remainder of the estate into shares . . . and shall hold, administer, and distribute each share according to the provisions of" Article IV(F). Appellant's App. Vol. II at 62. Article IV(F)(6) provides that, subject to Article VI(S), "whenever any beneficiary for whom a trust is then held shall have attained the age of twenty-five (25) years, the Trustee shall distribute to each beneficiary, free of trust, the entire principal and accumulated income, if any, of his or her separate trust." *Id*. at 63. Based on those two provisions, Gary contends, in effect, that the plain language of the Trust requires that the only action the Trustee is authorized to take is to distribute the assets immediately to Gary and the Grandsons on Sadie's death. We cannot agree.

[22] As discussed above, one provision of the Trust provides for the distribution of the Trust assets upon Sadie's death. And another provision of the Trust provides that the interest of the beneficiaries vested on Sadie's death. *See*

Appellant's App. Vol. II at 68.  However, there are other provisions of the Trust that grant the Trustee the discretion to retain and withhold distribution of the assets.  Indeed, one of the provisions that Gary relies on, Article IV(F)(6), provides for the distribution of assets "[s]ubject to a possible retention of some or all of the assets of the trust estate by the Trustee" pursuant to Article VI(S).  *Id.* at 63.  Article VI(S) provides that the trustee has the power "[t]o withhold from distribution, in the Trustee's discretion, at the time for distribution of any property in this trust . . . so long as the Trustee shall determine, in the Trustee's discretion, that such property may be subject to conflicting claims[.]"  *Id.* at 68.  Accordingly, it is clear that the Trustee has the discretion to withhold distribution of the assets instead of distributing the assets immediately on Sadie's death.

[23]     That discretion is further emphasized in Article VI(A), which provides that the trustee has the power to "continue to hold any property received in trust, *including undivided interests in real property* . . . as long as the Trustee, in the Trustee's discretion, may deem advisable[.]"  *Id.* at 65 (emphasis added).  Thus, the Trust explicitly grants the Trustee the power to hold any real property as long as the trustee deems it advisable.

[24]     Further, upon any division or distribution of the estate, Sadie granted the trustee the power to "partition, allot[,] and distribute the trust estate in undivided interests or in kind, or partly in money and partly in kind, at

valuations determined by the Trustee, *and to sell such property* as the Trustee may deem necessary to make division or distribution[.]" *Id.* at 66 (emphasis added). Accordingly, the Trust explicitly granted the Trustee the power to sell the real estate prior to distribution.

[25] Reading the Trust as a whole, which we are required to do, it is clear that the intent of the settlor was to grant discretion to the Trustee either to distribute the assets on her death or to delay their distribution. The Trust further granted the Trustee the discretion to sell any property in order to make the distributions. Because the Trustee has the discretion to retain and sell the Trust assets, including the Westfield property, we cannot say that any term of the settlement agreement that provided or allowed for the property to be sold instead of to be distributed immediately to Gary and the Grandsons improperly altered the terms of the Trust. As the settlement agreement did not alter the terms of the Trust, the trial court did not err when it granted the Trustee's motion to enforce the settlement agreement.

### Issue Two: Attorneys' Fees

[26] Gary next asserts that the Marion Superior Court erred when it ordered him to pay attorneys' fees for the Trustee and the Grandsons. Gary specifically asserts that the court erred when it ordered him to pay attorneys' fees because he contends he did not breach a term of the settlement agreement, which breach was necessary for the award of attorneys' fees under the agreement.

Accordingly, in order to determine whether the Marion Superior Court erred when it ordered Gary to pay attorneys' fees, we must first determine whether Gary breached the terms of the settlement agreement.

*Breach of Settlement Agreement*

[27] Gary contends that the Marion Superior Court erred when it ordered him to pay the attorneys' fees because he "did not breach any term or condition of the 2015 Settlement Agreement" when he filed his complaint to quiet title in Hamilton County and that "the trial court's April 2018 order does not identify any term, condition[,] or paragraph of the Settlement Agreement that Gary McQueary breached." Appellant's Br. at 25, 26. Because the question is whether Gary's action of filing the complaint to quiet title in Hamilton County breached the terms of the settlement agreement, we are in as good a position as the trial court to review the paper record and to determine whether Gary violated the agreement. As such, we review the Marion Superior Court's determination that Gary breached the settlement agreement and, thus, its award of attorneys' fees *de novo*.[4] *See Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 (Ind. Ct. App. 2014), *trans. denied*.

---

[4] The Trustee and the Grandsons contend that the "*de novo* standard of review does not apply" to the issue of whether Gary violated the settlement agreement because the trial court heard testimony about Gary's quiet title action being the reason for the need to incur attorneys' fees. Appellees' Br. at 31. The Trustee and the Grandsons are correct that the trial court allowed the attorneys to present sworn testimony regarding whether Gary breached the settlement agreement. However, the attorneys simply testified as to which provisions of

[28] The Trustee and the Grandsons first assert that Gary's action to quiet title violated the settlement agreement because the parties had agreed to extend the listing contract for the Westfield property so that the Trustee could sell it. On appeal, Gary contends that the act of filing his complaint to quiet title did not breach any terms of the settlement agreement because there is no provision in the settlement agreement that grants the Trustee "an everlasting right" to market and sell the real estate. Appellant's Br. at 26. We agree with Gary that the settlement agreement does not contain a provision that gives the Trustee a perpetual right to sell the Westfield property. Indeed, in the mediated settlement agreement, Gary and the Grandsons only "agree[d] to extend the real estate listing contract of [the Westfield property] . . . for three months after the date of the Court Order approving this Settlement." Appellant's App. Vol. II at 15. Accordingly, the parties only agreed to list the Westfield property for sale for three months beginning on August 27, 2015. We cannot say that Gary's attempt to quiet title in July 2017, eighteen months after the agreed-upon three-month listing contract had expired, violated the provision of the settlement agreement in which the parties agreed to list the property for sale.[5]

---

the settlement agreement they believed Gary breached. There is nothing about that testimony that put the trial court in a better position than this Court to determine whether the act of filing the quiet title action constituted a breach of the settlement agreement.

[5] The Trustee and the Grandsons also contend that Gary's action to quiet title violated the settlement agreement because getting title to the property would allow Gary to prohibit a sale of the property or to otherwise refuse to pay the Grandsons the $352,707 he owes to them. However, that is merely speculation

[29]     However, our conclusion that Gary's complaint to quiet title did not violate that provision of the settlement agreement does not end our inquiry as the Trustee and the Grandsons also asserted that Gary's complaint to quiet title violated the "release language" provision in Paragraph 12 of the settlement agreement. Appellees' Br. at 35. We must agree with the Trustee and the Grandsons. When Gary and the Grandsons signed the mediated settlement agreement, they also each agreed to

> hereby forever release and discharge each other . . . of and from *any and all* manner of actions, causes of action, suits, accounts, contracts, debts, claims, and demands whatsoever, at law or in equity, and however arising, on or before the date of this release involving the Trust, *related to [Sadie's] estate* or any other property in which she had an interest during her life and including all matters asserted, or *which could have been asserted*

by any of the parties under the cause number related to the docketed Trust. Appellant's App. Vol. II at 18 (emphases added). In other words, by entering into the settlement agreement Gary agreed not to file any cause of action against any of the other parties to the agreement for any claim that was or could have been asserted under the Trust's cause number.

---

about a potential future breach of the settlement agreement. Gary has not yet refused either to sell the property or to pay the Grandsons back after the sale of the property.

[30]    Here, Gary was the trustee of the Trust for over two years from the date Sadie died on June 10, 2013, until he was replaced on August 27, 2015, which time period included over sixteen months after the Trust was docketed on April 17, 2014. There is no dispute that, during his time as trustee, Gary administered the Westfield property as an asset of the Trust. Further, Gary makes no assertion that during the time period in which he served as the trustee he was unaware of the provision of the Trust that provided for the assets to be distributed upon Sadie's death. As such, Gary could have asserted a claim in the Marion Superior Court that the Westfield property had vested in him and the Grandsons immediately upon Sadie's death—which is the claim he asserted in his complaint to quiet title—after the Trust had been docketed but prior to entering into the mediated settlement agreement. Further, in addition to naming the Trustee as a defendant in his complaint to quiet title, Gary named the Grandsons as defendants.

[31]    Gary's complaint to quiet title was a cause of action related to Sadie's estate, which he could have asserted prior to entering into the agreement.[6] That is precisely the type of claim that Gary agreed not to bring against the Grandsons

---

[6] It is undisputed that Gary's interest in the Westfield property vested in him upon Sadie's death. *See* Appellant's App. Vol. II at 68. However, the question is not whether his interest in the Westfield property had vested. Rather, the question is whether Gary's action of filing the quiet title action, regardless of whether his interest had vested, breached a term of the settlement agreement.

when he signed the agreement. Accordingly, Gary breached the settlement agreement when he filed his complaint to quiet title to the Westfield property.

*Grandsons' Attorneys' Fees*

[32] As Gary violated a term of the settlement agreement, we next turn to whether the Marion Superior Court erred when it ordered Gary to pay attorneys' fees. It is well settled that Indiana adheres to the American Rule, which provides "that each party must pay his own attorney fees absent an agreement between the parties, statutory authority, or a rule to the contrary." *Branham Corp. v. Newland Resources, LLC*, 44 N.E.3d 1263, 1274 (Ind. Ct. App. 2015). Gary acknowledges that he and the Grandsons entered into an agreement "that is contrary to the 'American Rule.'" Appellant's Br. at 25. Indeed, Gary and the Grandsons agreed that, "[i]f any of the parties to this Settlement Agreement is required to initiate legal action to enforce the terms of this settlement, the prevailing party(ies) shall be entitled to recover their reasonable attorney's fees from the non-prevailing party(ies)." Appellant's App. Vol. II at 18.

[33] On appeal, Gary does not contend that the Grandsons were not parties to the settlement agreement. Neither does he contend that an award of attorneys' fees to the Grandsons would be improper if he breached the agreement. Because Gary breached the settlement agreement, which breach caused the Grandsons to initiate legal action to enforce the agreement, the trial court did not err when it ordered Gary to pay the Grandsons' attorneys' fees.

*Trustee's Attorney's Fees*

[34] Gary further contends that, even if he breached a term of the settlement agreement, the court erred when it ordered him to pay the Trustee's attorney's fees because the Trustee was not a party to the settlement agreement. Again, Indiana adheres to the American Rule, which provides "that each party must pay his own attorney fees absent an agreement between the parties, statutory authority, or a rule to the contrary." *Branham Corp.*, 44 N.E.3d at 1274. Gary asserts that, while he and the Grandsons entered into an agreement that was contrary to the American Rule, the Trustee was not a party to that agreement and, as such, the Trustee is not entitled to the "fee-shifting right" under the settlement agreement. Appellant's Br. at 27. We must agree.

[35] As we have already noted, the settlement agreement specifically provides that, if any party to the Settlement Agreement is required to initiate legal action to enforce the terms of the agreement, the prevailing party shall be entitled to recover its attorneys' fees from the nonprevailing party. Appellant's App. Vol. II at 18. Based on the plain language of that provision of the settlement agreement, it is clear that the parties only intended to deviate from the American Rule if another party to the agreement is required to initiate legal action. And the Trustee is not a party to the settlement agreement.

[36] Nonetheless, the Trustee and the Grandsons contend that the parties extended the right to seek attorney's fees to the Trustee because the Trustee was in privity

with the parties to the agreement. But the Trustee and the Grandsons do not cite any authority to support their contention that a trustee is in privity with the parties to a settlement agreement that resolves a dispute related to the Trust simply because of his role as trustee.[7] Further, even if we were to agree that the Trustee was in privity with the parties to the settlement agreement, we still could not agree that the Trustee is entitled to attorney's fees.

[37]    When the parties entered into the agreement, they agreed that the "Settlement Agreement shall be binding upon the parties' heirs, assigns[,] and executors." *Id*. While the parties specifically provided for the terms of the settlement agreement—including the fee-shifting provision—to be binding on their heirs, assigns, and executors, the parties, notably, did not provide for the agreement to be binding on those who are in privity with the parties to the agreement. Had the parties intended for those in privity to be bound by the agreement, they could have said so. But they did not. As such, the parties did not extend the fee-shifting rights to the Trustee, and the Trustee was not entitled to an award of attorney's fees. We therefore reverse the trial court's award of attorney's fees for the Trustee. While the Trustee is not entitled to an award of attorney's fees, we note that the Trust specifically granted the Trustee the power "[t]o commence or defend, *at the expense of the trust*, such litigation with respect to the

---

[7] The Trustee and the Grandsons only cite *Isp.com LLC v. Theising*, which held that a receiver of a corporation is in privity with the corporation. 805 N.E.2d 767, 774 (Ind. 2004).

trust or any property of the trust estate as the Trustee may deem advisable[.]" *Id*. at 68. (emphasis added). Accordingly, while the Trustee is not entitled to have Gary pay his attorney's fees, the Trustee is authorized to pay his attorney's fees out of the Trust.

### *Issue Three: Complaint to Quiet Title*

[38]    Gary finally contends that the Hamilton Superior Court erred when it dismissed his complaint to quiet title pursuant to Indiana Trial Rule 12(B)(8). As this Court has previously stated:

> Indiana Trial Rule 12(B)(8) permits the dismissal of an action when "[t]he same action [is] pending in another state court of this state." Trial Rule 12(B)(8) implements the general principle that, when an action is pending in an Indiana court, other Indiana courts must defer to that court's authority over the case. The rule applies where the parties, subject matter, and remedies are precisely the same, and it also applies when they are only substantially the same.

*Beatty v. Liberty Mut. Ins. Group*, 893 N.E.2d 1079, 1084 (Ind. Ct. App. 2008) (alterations in original). We review a trial court's dismissal of a complaint under Trial Rule 12(B)(8) *de novo*. *See id*.

[39]    On appeal, Gary simply asserts that, "[i]f this Court finds that the Marion County trial court erred by enforcing the Settlement Agreement to reform the terms of the Trust, . . . then this Court should also reinstate the Hamilton County Quiet Title Action[.]" Appellant's Br. at 29. Gary's contention on this

issue is thus contingent upon this Court's determination that the settlement agreement impermissibly altered the terms of the Trust and that the Marion Superior Court erred when it enforced that agreement.

[40] But, as discussed above, we do not agree with Gary that the settlement agreement improperly modified the Trust because the Trust provided the Trustee with the discretion to hold and sell the assets of the Trust. Accordingly, we do not agree with Gary that the Marion Superior Court erred when it enforced the settlement agreement. Because the Marion Superior Court did not err when it enforced the agreement, we cannot say that the Hamilton Superior Court erred when it dismissed Gary's complaint to quiet title because a substantially similar action was pending in Marion County. We affirm the Hamilton Superior Court's dismissal of Gary's complaint.

### Issue Four: Appellate Attorneys' Fees

[41] Finally, the Trustee and the Grandsons request that we award them appellate attorneys' fees. It is well settled that, "when a contract provision provides that attorneys fees are recoverable, appellate attorney fees may also be awarded." *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1010 (Ind. Ct. App. 2015). Here, it is undisputed that the settlement agreement provides for attorneys' fees. As the Grandsons have prevailed on appeal, we grant their request for appellate attorneys' fees, and we remand to the trial court for a determination of reasonable fees to award the Grandsons. *See id*. However, as

discussed above, the Trustee is not entitled to attorney's fees, so we decline his request for appellate attorney's fees.

## *Conclusion*

[42] In sum, we hold that the Marion Superior Court did not err when it enforced the settlement agreement because the settlement agreement did not alter the terms of the Trust. We also hold that the Marion Superior Court did not err when it awarded attorneys' fees to the Grandsons because Gary violated a provision of the settlement agreement. However, the trial court erred when it awarded attorney's fees to the Trustee because the Trustee was not a party to the settlement agreement. We further hold that the Hamilton Superior Court did not err when it dismissed Gary's complaint to quiet title because the same matter was pending in Marion County. Finally, we grant the Grandsons' request for appellate attorneys' fees, but we deny the Trustee's request.

[43] Affirmed in part, reversed in part, and remanded for further proceedings.

Baker, J., and Robb, J., concur.