

FILED

Sep 17 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Duran L. Keller
Keller Law
Lafayette, Indiana

ATTORNEY FOR APPELLEES

Joseph R. Delehanty
Gutwein Law
Lafayette, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Syed Umar Husainy, <br><br> *Appellant-Defendant-Counterclaimant/Cross-Appellee,* <br><br> v. <br><br> Granite Management, LLC, and Jaffa Varsity 1, LLC, <br><br> *Appellees-Plaintiffs-Counterclaim Defendants/Cross-Appellants* | September 17, 2019 <br><br> Court of Appeals Case No. 18A-PL-2752 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Michael A. Morrissey, Special Judge <br><br> Trial Court Cause No. 79D06-1706-PL-80 |

**Crone, Judge.**

## Case Summary

[1]     Syed Umar Husainy leased an apartment in a building that was managed by Granite Management, LLC ("Granite"), and owned by Jaffa Varsity 1, LLC ("Jaffa"). Granite sued Husainy, seeking eviction for alleged nonpayment of rent/breach of contract. Husainy countersued Granite and filed third-party

claims against Jaffa, alleging breach of the covenant of quiet enjoyment and violations of a statute that requires a landlord to maintain basic levels of habitability. After a trial, the jury found against Granite on its breach of contract claim. The jury found in favor of Husainy on his breach of covenant claim and also found in favor of Husainy on his statutory claim, which entitled him to seek attorney's fees. Husainy requested nearly $60,000 in fees, and the trial court awarded him $2000. Granite and Jaffa (collectively "Appellees") filed a motion to correct error, asserting that the jury's verdicts for Husainy were not supported by the evidence. The trial court granted the motion in part and vacated the jury's verdict on the breach of covenant claim, but denied the motion in part as to the statutory claim.

[2] Husainy now appeals, arguing that the trial court erred in granting Appellees' motion to correct error on his breach of covenant claim and in awarding him only $2000 in attorney's fees. He also argues that the trial judge was biased. On cross-appeal, Appellees argue that the trial court erred in denying their motion to correct error on Husainy's statutory claim. We affirm the denial of Appellees' motion to correct error on Husainy's statutory claim, reverse the grant of Appellees' motion to correct error on Husainy's breach of covenant claim, and reverse the award of attorney's fees as inadequate and remand for further proceedings on that issue. We also hold that Husainy has waived his bias claim.

## Facts and Procedural History

[3] Husainy started leasing his third-floor apartment in the Varsity Building in West Lafayette in 2007. On March 16, 2016, he signed an agreement for a lease term of May 31, 2016, through May 31, 2017. The agreement states that Granite is the landlord and bears the preprinted name of a Granite representative, who did not sign the document. The agreement states that Husainy's monthly rent is $725 and that his "[security] deposit of $605 carries over." Ex. Vol. at 24. Husainy was charged a monthly parking fee of $25 pursuant to a separate parking lease.

[4] On January 23, 2017, Granite filed a notice of claim against Husainy in small claims court, seeking eviction for alleged nonpayment of rent, maintenance charges, and late fees in the amount of $1280.50. On February 3, 2017, Husainy filed a jury trial demand, a counterclaim against Granite, and a third-party complaint against Jaffa. By agreement of the parties, the case was transferred to the plenary docket. In March 2017, Husainy filed a motion for change of judge, and the parties agreed to the selection of a special judge. Husainy vacated his apartment at the end of his lease term in May 2017 but did not receive his security deposit because it had been applied against his outstanding unpaid balance of over $2750.

[5] Ultimately, the following claims were set for trial: (1) Granite's claim against Husainy for nonpayment of rent/breach of contract; (2) Husainy's claim against Appellees for breach of the covenant of quiet enjoyment; (3) Husainy's claim against Appellees for an alleged violation of Indiana Code Section 32-31-8-5,

which requires a landlord to maintain basic levels of habitability; and (4) Husainy's claim against Appellees for an alleged violation of Indiana Code Section 32-31-3-12, which requires a landlord to return a tenant's security deposit and timely provide an itemized list of any deductions. A two-day jury trial began on August 22, 2018. Appellees presented evidence that in November 2016 the Varsity Building's septic pit had two overflows, which they attributed to plumbing clogs caused by Husainy flushing cleaning wipes down his toilet; Husainy was charged for removal of the clogs but refused to pay. Husainy took the stand and denied flushing wipes down his toilet. He also testified that he experienced several "issues" with the building, including "no heat […] at times[,]" pipe leaks that "covered" the hallway and stairwell landings with half an inch of water, and interruptions of both cold and hot water service, which compelled him to purchase bottled water and shower at a college recreational center and at friends' homes. Tr. Vol. 4 at 184, 190.

[6]     During closing argument, Husainy's counsel asserted that because Granite's representative did not sign the lease agreement, there was no contract and therefore no breach of contract by Husainy or breach of the covenant of quiet enjoyment by Appellees. Regarding Appellees' alleged violation of Section 32-31-8-5, Husainy's counsel initially asked for "$50" to reimburse Husainy for the bottled water but then stated, "[Husainy's] asking you to ask for a dollar. I think I asked for 50 but you guys get to determine what it's worth to go through that sort of stuff." Tr. Vol. 5 at 6, 10. Regarding Appellees' alleged violation of Section 32-31-3-12, Husainy's counsel argued that the statute "says you have to

give this person their money back, unless they have caused these damages. And if you're wrong, this person gets their security deposit back." *Id.* at 7. The jury found against Granite on its breach of contract claim. The jury found in favor of Husainy on his breach of covenant claim and awarded him $4500 in damages. The jury also found in favor of Husainy on his Section 32-31-8-5 claim, which entitled him to seek attorney's fees pursuant to Section 32-31-8-6, and awarded him $605 in damages.

[7] Appellees filed a motion to correct error pursuant to Indiana Trial Rules 50 and 59, asserting that the jury's verdicts in favor of Husainy's claims were not supported by the evidence. Husainy requested $59,020.67 in attorney's fees. After a hearing, the trial court granted Appellees' motion in part and vacated the jury's verdict on the breach of covenant claim, but denied the motion in part as to the Section 32-31-8-5 claim. The court also awarded Husainy $2000 in attorney's fees. Husainy appealed, and Appellees cross-appealed.[1] Additional facts will be provided below.

---

[1] Husainy has filed a motion to strike Appellees' cross-appeal as untimely, relying on a case involving a belated grant of a motion to correct error. Because the trial court in this case timely ruled on Appellees' motion to correct error, we find Husainy's cited authority inapposite and deny his motion to strike by separate order.

# Discussion and Decision

## Section 1 – The trial court abused its discretion in granting Appellees' motion to correct error on Husainy's breach of the covenant of quiet enjoyment claim.

[8] We first address Husainy's contention that the trial court erred in granting Appellees' motion to correct error on his breach of covenant claim. "We review a trial court's ruling on a motion to correct error for an abuse of discretion." *Sch. City of Hammond Dist. v. Rueth*, 71 N.E.3d 33, 40 (Ind. Ct. App. 2017), *trans. denied*. A trial court abuses its discretion if its "action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom." *Id*. (quoting *Cox v. Matthews*, 901 N.E.2d 14, 21 (Ind. Ct. App. 2009), *trans. dismissed*).

[9] "Indiana's trial rules allow a party to move for judgment on the evidence in a motion to correct error." *Id*. (citing Ind. Trial Rule 50(A)(4)). "When considering a motion to correct error, if the court 'determines that prejudicial or harmful error has been committed,' it 'shall take such action as will cure the error.'" *Id*. (quoting Ind. Trial Rule 59(J)). Trial Rule 50(A) provides,

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

When a trial court considers a motion for judgment on the evidence following a jury verdict, the court "may not weigh the evidence and 'must view only the evidence favorable to the non-moving party and the reasonable inferences to be drawn from that evidence.'" *Rueth*, 71 N.E.3d at 41 (quoting *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 421, 363 N.E.2d 985, 990 (1977)). "The trial court may enter judgment only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim, i.e., the evidence must point unerringly to a conclusion not reached by the jury." *Id*. (quoting *Huff*, 266 Ind. at 421, 363 N.E.2d at 990) (italics in *Rueth* omitted). "If there is relevant evidence that supports the verdict, a motion for judgment on the evidence is improper because the final determination must be left to the fact-finder." *Id*.

[10] Determining whether evidence is sufficient to survive a motion for judgment on the evidence "requires both a quantitative and a qualitative analysis." *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 840 (Ind. 2012) (quoting *Am. Optical Co. v. Weidenhammer*, 457 N.E.2d 181, 184 (Ind. 1983)). "Evidence fails quantitatively only if it is wholly absent; that is, only if there is no evidence to support the conclusion." *Id*. "If some evidence exists, a court must then proceed to the qualitative analysis to determine whether the evidence is substantial enough to support a reasonable inference in favor of the non-moving party." *Id*. Evidence fails qualitatively "when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because the

intended inference may not be drawn therefrom without undue speculation." *Id*. (quoting *Am. Optical*, 457 N.E.2d at 184).

[11] Among other things, the covenant of quiet enjoyment "protect[s] the possessory interests of the lessee in the beneficial use and enjoyment of the demised property." *Sigsbee v. Swathwood*, 419 N.E.2d 789, 797 n.8 (Ind. Ct. App. 1981) (citing, inter alia, *Nate v. Galloway*, 408 N.E.2d 1317 (Ind. Ct. App. 1980)). Contrary to what Appellees suggest, "eviction is not a prerequisite for a recovery of damages based on the landlord's breach" of the covenant. *Nate*, 408 N.E.2d at 1321. Indeed, as the *Nate* court observed, "[i]t is not fair or logical to allow the timid tenant, who easily succumbs to the landlord's intimidation and vacates the premises, to recover damages, and yet deny damages to the stalwart tenant who is aware of his legal rights and refuses to be intimidated or driven from his home." *Id*. at 1322.

[12] Husainy alleged that Appellees breached the covenant of quiet enjoyment by "fail[ing] to maintain the premises in good and proper order." Appellant's App. Vol. 2 at 114. The trial court gave the following final instruction to the jury on the elements of Husainy's claim:

> To recover damages from Granite and/or Jaffa, Husainy must prove all of the following by the greater weight of the evidence:
>
> 1. The parties entered into a contract;
> 2. Husainy performed his part of the contract;
> 3. Granite and/or Jaffa failed to perform its part of the contract;
> 4. Granite's and or Jaffa's breach damaged Husainy; and

5.  Granite's and/or Jaffa's breach was a responsible causes [sic] of those damages.

*Id*. at 42. The verdict form indicates that the jury found Appellees liable and assessed damages in the sum of $4500, of which $0 were "also included in damages assessed in favor of Husainy" and against Appellees on his Section 32-31-8-5 claim. *Id*. at 35. In its order on Appellees' motion to correct error, the trial court found "that the jury verdict is not supported by the evidence. Husainy presented no evidence of actual damages and further, counsel for Husainy in final argument, argued that Husainy was merely inconvenienced by certain maintenance issues during his occupancy." Appealed Order at 1.

[13]  "Damages are particularly a jury determination." *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind. Ct. App. 1994), *trans. denied*. "No particular degree of mathematical certainty is required in awarding damages." *Greives v. Greenwood*, 550 N.E.2d 334, 339 (Ind. Ct. App. 1990). "We will not deem a verdict to be the result of improper considerations, unless it cannot be explained on any other reasonable ground." *Prange*, 629 N.E.2d at 922. "Our inability to look into the minds of jurors and determine how they computed an award is, to a large extent, the reason behind the rule that a verdict will be upheld if the award falls within the bounds of the evidence." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1113 (Ind. Ct. App. 2011), *trans. denied* (2012). "[I]f there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed." *Prange*, 629 N.E.2d at 922.

[14] Appellees observe that Husainy's claim "was based upon a contractual relationship" and assert that "rules for the recovery of damages under contract applies [sic]." Appellees' Br. at 27, 28. Appellees further assert that "[t]he measure of damages in a breach of contract case is the loss actually suffered by the breach." *Id.* at 28 (citing *Colonial Discount Corp. v. Berkhardt*, 435 N.E.2d 65, 66 (Ind. Ct. App. 1982)).[2] One legal treatise states that in cases where an interference with quiet enjoyment is not an eviction, "actual damages are measured by the difference between the value of what the lessee should have received and the value of what he or she did receive." 49 AM. JUR. 2D *Landlord and Tenant* § 486 (Aug. 2019 update).

[15] Pursuant to the lease agreement, Granite was responsible for furnishing water and gas. Ex. Vol. at 15. Husainy testified about frequent interruptions of cold

---

[2] Appellees also assert, "Husainy had the burden of proving damages on his Breach of Quiet Enjoyment claim, and he failed to prove any damages. In fact, Husainy requested $0 in damages on this claim." Appellees' Br. at 28. That request appears to have been part of Husainy's counsel's strategy to avoid liability for Granite's breach of contract claim. *See* Tr. Vol. 4 at 249 (closing argument by Husainy's counsel: "When you see the verdict form, and it says for the breach of covenant, quiet enjoyment for Mr. Husainy, put a zero there, because there was no contract, and it's not fair for us to be going, well, they didn't have a contract in the first place, and at the same time saying, well, we want the covenant that goes with that, even if we could. Put a zero down there. That's fair."). Obviously, the jury found that a contract existed between Granite and Husainy, that Husainy did not breach the contract, and that Appellees breached the corresponding covenant of quiet enjoyment, thereby damaging Husainy. Appellees cite no authority for the proposition that Husainy should be bound by his counsel's closing argument.

and/or hot water service,[3] which compelled him to purchase bottled water in bulk at the gas station and shower at a college recreational center and at friends' homes, as well as multiple heating outages during cold weather. He supported this testimony with email correspondence between him and Granite representatives regarding these problems. Husainy testified that a case of bottled water would cost "about" $5 or $6, "depending on the water[,]" and that he had to make such purchases "over 10 times, 20 times probably, maybe more." Tr. Vol. 4 at 188. The jury awarded Husainy damages equivalent to six months' rent, including his parking fee ($750 × 6 = $4500). Given the numerous interruptions of and difficulties with the building's water and heating service, we cannot conclude that the jury's damages award falls outside the bounds of the evidence presented at trial.[4] Accordingly, we conclude that the trial court abused its discretion in granting Appellees' motion to correct error on

---

[3] Husainy testified, "[T]here's periods where [the water was off] a few times a week, and then there's a period where it's like – well, very often everything happens a couple of times a month." Tr. Vol. 4 at 196. Regarding the water temperature, he testified,

> I'm not going lie when I say it was like hot and cold. It was like it wasn't just hot and cold. It was like scalding hot. You would be in the shower and you'd have to – you'd get red skin. Sometimes it would be freezing. It would be really bad – extremes. Sometimes we wouldn't even have hot water.

*Id.*

[4] Appellees complain that "Husainy continues to point to damages that may arise out of a recovery in tort, namely damages for emotional distress, and cites to [his] trial testimony … that alludes to various instances of inconvenience or alleged emotional distress or embarrassment." Appellees' Br. at 28. Because the jury's award can be explained on a proper basis, we need not address this argument. Appellees also complain that "Husainy's counsel made several inflammatory comments in his closing argument regarding unfounded accusations that had nothing to do with the matter at hand, including the ownership of Granite and the pay rates of Granite employees, among others." *Id.* at 27. Because Appellees failed to object to those comments at trial, they have waived any claim of error on appeal. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014).

Husainy's breach of quiet enjoyment claim.  We therefore reverse and remand with instructions to reinstate the jury's verdict on that claim.

## Section 2 – The trial court did not abuse its discretion in denying Appellees' motion to correct error on Husainy's Section 32-31-8-5 claim.

Next, we address Appellees' contention that the trial court abused its discretion in denying their motion to correct error on Husainy's claim based on Indiana Code Section 32-31-8-5, which reads as follows:

> A landlord shall do the following:
>
> (1) Deliver the rental premises to a tenant in compliance with the rental agreement, and in a safe, clean, and habitable condition.
>
> (2) Comply with all health and housing codes applicable to the rental premises.
>
> (3) *Make all reasonable efforts to keep common areas of a rental premises in a clean and proper condition.*
>
> (4) *Provide and maintain the following items in a rental premises in good and safe working condition, if provided on the premises at the time the rental agreement is entered into:*
>
> > (A) Electrical systems.
> >
> > (B) *Plumbing systems sufficient to accommodate a reasonable supply of hot and cold running water at all times.*
> >
> > (C) Sanitary systems.
> >
> > (D) Heating, ventilating, and air conditioning systems.  A

heating system must be sufficient to adequately supply
heat at all times.

(E) Elevators, if provided.

(F) Appliances supplied as an inducement to the rental
agreement.

(Emphases added.) Husainy alleged that Jaffa "failed to comply with one or
more of the aforementioned requirements" and that he "sustained damages as a
result of [Jaffa's] compliance failures." Appellant's App. Vol. 2 at 115, 116.

[17] Damages for failures to comply with Section 32-31-8-5 are recoverable pursuant
to Indiana Code Section 32-31-8-6, which provides,

(a) A tenant may bring an action in a court with jurisdiction to
enforce an obligation of a landlord under this chapter.

(b) A tenant may not bring an action under this chapter unless
the following conditions are met:

(1) The tenant gives the landlord notice of the landlord's
noncompliance with a provision of this chapter.

(2) The landlord has been given a reasonable amount of
time to make repairs or provide a remedy of the condition
described in the tenant's notice. The tenant may not
prevent the landlord from having access to the rental
premises to make repairs or provide a remedy to the
condition described in the tenant's notice.

(3) The landlord fails or refuses to repair or remedy the
condition described in the tenant's notice.

(c) This section may not be construed to limit a tenant's rights under IC 32-31-3, IC 32-31-5, or IC 32-31-6.

(d) If the tenant is the prevailing party in an action under this section, the tenant may obtain any of the following, if appropriate under the circumstances:

> (1) Recovery of the following:
>
>> (A) *Actual damages and consequential damages.*
>>
>> (B) Attorney's fees and court costs.
>
> (2) Injunctive relief.
>
> (3) *Any other remedy appropriate under the circumstances.*

(e) A landlord's liability for damages under subsection (d) begins when:

> (1) the landlord has *notice or actual knowledge* of noncompliance; and
>
> (2) the landlord has:
>
>> (A) refused to remedy the noncompliance; or
>>
>> (B) failed to remedy the noncompliance within a reasonable amount of time following the notice or actual knowledge;

whichever occurs first.

(Emphases added.)  As mentioned above, the jury awarded Husainy $605 in damages on his Section 32-31-8-5 claim.

[18]  Appellees contend that

> Husainy failed to provide probative evidence of any notice of proposed defects to Granite that was [sic] not remedied in a reasonable amount of time.  To the contrary, evidence was provided that Husainy's maintenance requests were responded to and corrected promptly.  Husainy could not identify one instance in which he made a maintenance request to Granite that was not responded to.

Appellees' Br. at 35.[5]

[19]  The question is not whether Granite failed to respond to a maintenance request, but whether Granite failed to remedy a noncompliance with Section 32-31-8-5 in a reasonable amount of time.  On Tuesday, April 25, 2017, a Granite representative notified building residents via email that "[i]n order to make a necessary repair to the water heater, you may not have hot water this afternoon."  Ex. Vol. at 38.  Husainy replied, "We haven't had hot water for the past few days…"  *Id.*  This exchange establishes that Granite had both actual knowledge and notice of a noncompliance with Section 32-31-8-5(4)(B).  On Friday, May 5, a Granite representative notified building residents that

---

[5] We reject Husainy's argument that Appellees' motion to correct error failed to specifically allege that the jury's verdict was excessive.  *See* Appellant's App. Vol. 3 at 82 (motion to correct error:  "There was no basis for this [$4500] damage award either in the record or in Husainy's counsel's arguments during trial.").

"[m]aintenance has located the cause of the water heater issue and parts have been ordered. They should arrive early next week." *Id*. at 48. Husainy replied, "[O]kay, so cold showers until then? Even when it hits 30 degrees outside? Come on guys, this has been going on for weeks. That part needs to be overnighted, or you should be putting us in hotels." *Id*. Finally, shortly after noon on Monday, May 8, a Granite representative notified building residents that "[t]he new water heater has been successfully installed and you should have full access to the hot water!" *Id*. at 49. Based on the foregoing, a jury could reasonably find that Granite did not remedy the lack of hot running water within a reasonable amount of time.

[20]    Furthermore, Husainy testified that a "main pipe" in the third-floor hallway ceiling burst in January 2017 after "dripping […] slowly" for "the past year." Tr. Vol. 4 at 193. He saw a Granite maintenance worker "getting soaked" while trying to repair the pipe as "water was pouring down the stairs." *Id*. at 190. "It was going down the stairs like a waterfall, going all the way, third floor, down the stairs, second floor, down the stairs, first floor." *Id*. According to Husainy, "People were slipping, falling down. I was slipping.[…] It was dangerous, it really was." *Id*. Husainy told a Granite representative about the leak in person. It took "well over a week" to repair the leak, during which time the stairwell was "all wet. No caution tape, no signs, no one mopping it up, nothing." *Id*. at 194. Husainy took photos and videos of the "flooded" premises that were admitted into evidence at trial. *Id*. From this, a jury could reasonably find that Granite had both actual knowledge and notice of the leak

and did not make all reasonable efforts to keep the building's common areas in a clean and proper condition as required by Section 32-31-8-5(3).

[21] Appellees contend that "the jury's damage award, $605, has no connection to any testimony or evidence provided at trial. Though there was testimony and evidence presented that identified $605 as the amount of Husainy's security deposit, there was no further evidence to connect the jury's damage award to that number." Appellees' Br. at 34.[6] One could reasonably infer that the jury determined that awarding Husainy the amount of his security deposit for Appellees' multiple failures to comply with Section 32-31-8-5 was a "remedy appropriate under the circumstances" pursuant to Section 32-31-8-6(d)(3), and we cannot conclude that this was an abuse of discretion. We therefore hold that the trial court did not abuse its discretion in denying Appellees' motion to correct error on Husainy's Section 32-31-8-5 claim.

## Section 3 – The trial court abused its discretion in awarding Husainy only $2000 in attorney's fees.

[22] We now address Husainy's argument that the trial court erred in awarding him only $2000 of his requested $59,020.67 in attorney's fees pursuant to Section 32-31-8-6(d)(1)(B), which provides that a tenant who prevails in an action under this section "may obtain" attorney's fees "if appropriate under the circumstances." "It is well settled that Indiana adheres to the American Rule,

---

[6] Appellees note that Husainy's counsel requested minimal damages in closing argument, but the jury was not obligated to grant this request.

which provides 'that each party must pay his own attorney fees absent an agreement between the parties, statutory authority, or a rule to the contrary.'" *In re McQueary*, 125 N.E.3d 664, 674 (Ind. Ct. App. 2019) (quoting *Branham Corp. v. Newland Res., LLC*, 44 N.E.3d 1263, 1274 (Ind. Ct. App. 2015)). "[W]e review an award of attorney fees for an abuse of discretion." *Benaugh v. Garner*, 876 N.E.2d 344, 347 (Ind. Ct. App. 2007), *trans. denied* (2008). "The trial court has broad discretion in assessing attorney fees, and we will reverse only if the award is clearly against the logic and effect of the facts and circumstances before the court." *Id*. "Although the trial court is entitled to consider the amount involved in the lawsuit in determining the reasonableness of the requested fees, we have held that the trial court abuses its discretion if it reduces an otherwise reasonable fee request based on the amount of the judgment." *Id*. at 348.

[23]   The trial court's order states,

> The subject litigation was prolonged and encompassed issues far beyond Husainy's claim that the landlord breached his statutory duties as defined in I.C. 32-31-8-5. In fact, this litigation was predominately limited to Granite/Jaffa's claim for damages and Husainy's defense of said claim. Only nominal attention was given to Husainy's claim under I.C. 32-31-8-5. In fact, counsel for Husainy argued in final argument that a judgment for [that claim] of one ($1.00) dollar would be satisfactory. I.C. 32-31-8-6(b)(1)(B), states Husainy is entitled to attorney's fees "if appropriate under the circumstances." That Husainy argued for a mere one ($1.00) dollar verdict for his claim pursuant to I.C. 32-31-8-5 and was given a verdict of only $605.00, the Court finds Husainy's claim for attorney fees in the sum of $59,020.67

to be unreasonable and unwarranted. Any balance of fees incurred by Husainy fall under the American Rule and are the obligation of Husainy.

Appealed Order at 2.[7]

[24] The trial court's order disregards Appellees' significant role in driving up Husainy's legal fees.[8] Granite initiated this lawsuit against Husainy in small claims court in January 2017, seeking $1280.50 in unpaid rent, maintenance charges, and late fees that accrued after Husainy allegedly caused the building's septic pit to overflow on two occasions. Husainy denied causing the overflows, countersued, and demanded a jury trial.[9] At a hearing in October 2017, Husainy's counsel informed the trial court that he had offered to settle the case as a "walk-away," i.e., that both sides would "just call it even[,]" but Appellees' counsel was "continually prosecuting for attorneys' fees." Tr. Vol. 2 at 8, 9,

---

[7] At the hearing on the parties' motions, the trial court told Husainy's counsel,

> Now, if you want to put Mr. Husainy on the stand and have him talk about what your fee arrangement was, when he retained you, and what of this $60,000 you truly expect him to pay, show proof of payment of the fees, I'll reconsider. But I don't think he's going to pay you [$]60,000, and that's not the way the system works.

Tr. Vol. 5 at 66. We are unaware of any cases holding that a party must demonstrate proof of payment to be eligible for an award of attorney's fees. *Cf. Beeson v. Christian*, 594 N.E.2d 441, 443 (Ind. 1992) (stating that public policy of permitting fee awards in dissolution actions to ensure equal access to courts "would be undermined if we were to hold that a party must be personally obligated to pay attorney fees before the trial court could order the other party to pay those fees.").

[8] Appellees assert that the litigation "was largely prolonged by Husainy's persistent litigation strategy throughout the case, including his filing for sanctions, motions to compel, and motion to certify for interlocutory appeal, which were all denied." Appellees' Br. at 32. The mere fact that those motions were denied does not mean that they were vexatious or frivolous, as Appellees suggest.

[9] Husainy's counsel told the trial court that "the reason why we got it out of small claims court was because in small claims court you can simply say a bunch of hearsay, which is what we're trying to avoid[.]" Tr. Vol. 2 at 51.

16. At a hearing in December 2017, Husainy's counsel stated, "We've been trying to walk away since the beginning, and we're getting to a point now where it's the point of no return." *Id.* at 36. And at a hearing in February 2018, six months before the two-day jury trial, Husainy's counsel stated that Appellees had "a request for over $32,000 in attorneys' fees[.]" *Id.* at 91. Husainy trenchantly observes that he "can only imagine what [Appellees] would have claimed for fees had [they] prevailed" at trial. Appellant's Br. at 19.

[25] Appellees did not prevail, however, so Husainy's counsel submitted an affidavit and itemized invoice for $59,020.67 in support of his request for attorney's fees.[10] At the hearing, Husainy's counsel offered the testimony of attorney John Stuckey, who had been practicing law on behalf of both plaintiffs and defendants since 1989, was familiar with Husainy's counsel and this case, and "saw portions of both days of trial." Tr. Vol. 5 at 68.[11] Stuckey opined that "the amount requested is a reasonable fee for the case." *Id.* at 75. More specifically, he stated that Husainy "was obviously staring down the barrel of a $2,000 charge from Granite that he couldn't pay, and he was staring down the

---

[10] The invoice included approximately $1235 in expenses and 165 hours of legal work at $350 per hour. Husainy's counsel stated that he did not bill for his work on several counts that ultimately were dismissed. Tr. Vol. 5 at 63. The trial court stated that it did not "have any problem with the affidavit and the way [the] bill's set out[.]" *Id.* at 71.

[11] Stuckey testified that he had been lead counsel in well over fifteen jury trials and had been awarded $16,000 in attorney's fees for a $400 claim after his first jury trial in the early 1990s.

barrel of a $30,000 legal bill that he couldn't pay. I think the result obtained was an excellent result under the circumstances, yes." *Id*. at 82-83.

[26] Husainy correctly observes that the purpose of Section 32-31-8-6 and similar statutes authorizing the recovery of attorney's fees is to "serve [the] public policy of equal access to courts despite [the] relative financial conditions of parties." Appellant's Br. at 23 (citing *Pinnacle Props. v. Saulka*, 693 N.E.2d 101, 105 (Ind. Ct. App. 1998), *trans. denied*). He argues that the trial court's award in this case "is far too small to recompense a successful plaintiff for filing and prosecuting a complaint and preparing for and conducting a multiple-day jury trial" and "barely covers the cost, excluding attorney's fees, of one of the depositions that was taken." Appellant's Br. at 24. He further argues that upholding this award "would discourage attorneys from representing parties without financial means to pay attorney's fees, even where the legislature created a remedy for the same. And the effect here would be that even when a tenant wins, he loses." *Id*.

[27] We agree. *See Benaugh*, 876 N.E.2d at 349 (concluding that $1000 fee award for prevailing party in criminal conversion action was "far too small an amount to recompense an ultimately successful plaintiff for filing and prosecuting a complaint and preparing for and conducting a three-day jury trial" that resulted in verdict of $1950). We also agree with Husainy's contention that the trial court abused its discretion in limiting the fee award based on counsel's requested verdict. It was counsel's prerogative to request a minimal recovery as

a matter of trial strategy, and the jury was the ultimate arbiter of the value of Husainy's claim.

[28]     Consequently, we reverse and remand with instructions to reconsider Husainy's request for fees in light of the following nonexclusive factors listed in Indiana Professional Conduct Rule 1.5(a) regarding the reasonableness of a fee:[12]

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

[12] The trial court short-circuited Husainy's counsel's attempt to question Stuckey about the factors at the hearing. Tr. Vol. 5 at 77-84.

(8) whether the fee is fixed or contingent.

And now that we have upheld the jury's verdict on Husainy's Section 32-31-8-5 claim, the trial court should consider the reasonableness of appellate attorney's fees as well.

## Section 4 – Husainy has waived his argument that the trial judge was biased against him and should have disqualified himself.

[29] Finally, citing numerous remarks made before, during, and after the trial, Husainy argues that the trial judge was biased or prejudiced against him and therefore should have disqualified himself pursuant to Indiana Code of Judicial Conduct Rule 2.11(A) ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding."). Appellees argue, and we agree, that Husainy has waived this argument by raising it for the first time on appeal. *Southwood v. Carlson*, 704 N.E.2d 163, 167 (Ind. Ct. App. 1999).[13] Accordingly, we do not address it. We do, however, take this opportunity to remind the trial judge of his obligation to be "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials,

---

[13] Husainy does not attempt to refute Appellees' waiver argument in his reply brief.

and others with whom the judge deals in an official capacity[.]" Ind. Code of Jud. Conduct, Rule 2.8(B).

[30] Affirmed in part, reversed in part, and remanded.

Baker, J., and Kirsch, J., concur.